**General William C. WESTMORELAND, Plaintiff,**

v.

**CBS INC., et al., Defendants.**

**No. 82 Civ. 7913 (PNL).**

United States District Court, S.D. New York.

Dec. 13, 1984.

See also D.C., 97 F.R.D. 703.

Dan M. Burt, Capital Legal Foundation, Washington, D.C., for plaintiff; David M. Dorsen, Washington, D.C., Donovan, Leisure, Newton & Irvine, New York City, of counsel.

David Boies, Stuart W. Gold, Cravath, Swaine & Moore, New York City, for defendant CBS Inc.; Robert H. Baron, Randy M. Mastro, William F. Duker, Michael R. Doyen, George Vradenburg, III, CBS Inc., New York City, of counsel.

## OPINION AND ORDER

LEVAL, District Judge:

CBS objects on numerous grounds to the receipt in evidence of the Benjamin Report. The motion is granted for reasons explained below—in particular that the Report is largely irrelevant to the issues before the jury and consists in great part of opinion and hearsay of varying degrees of remoteness. Various facts asserted by the Report may nonetheless be received.

The history of the Report in brief is as follows: CBS broadcast its documentary— *The Uncounted Enemy: A Vietnam Deception* —on January 23, 1982. Three days later General Westmoreland held a news conference challenging the broadcast, and in May 1982, TV Guide carried a cover article criticizing it.

Thereupon Van Gordon Sauter, President of CBS News, asked Burton Benjamin, a Senior Executive Producer of CBS News, to undertake a study of the preparation of the broadcast in the light of the criticisms leveled by the Westmoreland press conference and the TV Guide article. Benjamin delivered his report in writing on July 8, 1982. Sauter shortly thereafter on July 15, 1982 issued a public statement summarizing briefly the contents of the Benjamin Report and stating that CBS stood by its broadcast.

Plaintiff initially stated that the entire report would be offered in evidence. CBS responded with a lengthy memorandum setting forth numerous objections, including the argument that the Report contained many instances of double and triple hearsay and inadmissible repetitions of charges from the TV Guide article.

Plaintiff's counsel then deleted certain hearsay portions of the Report from his offer. Also, where the Report quoted charges from the TV Guide article, plaintiff reworded the Report to eliminate reference to TV Guide and to put the issue rather in terms of questions: Whether CBS had done so-and-so in the preparation of the broadcast. The retyped and amended version of the Report offered by plaintiff runs 64 pages after deletions.

1. *Report Not Excluded as a Subsequent Remedial Measure Under Rule 407.*

CBS contends that receipt of the Report is barred by Rule 407, Fed.R.Evid. and judge-made doctrine to the effect that subsequent remedial measures may not be received as an admission of prior culpable conduct. The doctrine, however, does not go as far as CBS would push it. The fact that subsequent remedial measures are excluded as admissions of fault does not mean that competent evidence resulting from an internal investigation of a mishap must also be excluded. CBS argues: (1) honest self-examination and self-policing should be encouraged; (2) a rule permitting the discovery and the use in evidence of reports of such self-investigations will discourage potential defendants from doing it; therefore, (3) the rule of law should exclude such evidence. The logic of the argument parallels that which underlies Rule 407. See Advisory Committee Note.

The fault of the argument is not in its logic but in that it goes too far and fails to credit the social value of making available for trial what is often the best source of information. CBS' argument really goes beyond the issue of the admissibility of the investigative report; its logic addresses as well the admissibility of the facts uncovered by the investigation. If the internal investigator uncovered the "smoking gun," it is often a cosmetic matter whether this evidence is received as a part of the investigative report or in some other manner. The question of social policy raised by CBS is whether in order to encourage such investigations, their fruits should be shielded from use by adverse claimants. There is, however, no such doctrine either as to the internal investigative report or as to facts revealed by it. In industrial and railroad accident litigation, for example, it is commonplace that such reports, or at least the facts revealed by them, are used by the injured to establish the liability of the company that conducted the investigation in spite of CBS' arguments. *Wright v.*

*Farmers Coop of Arkansas & Oklahoma,* 681 F.2d 549 (8th Cir.1982); *Collins v. Wayne Corp.,* 621 F.2d 777 (5th Cir.1980); *United States v. Lykes,* 432 F.2d 1076 (5th Cir.1970); *Southern Ry. Co. v. Lanham,* 403 F.2d 119 (5th Cir.1968); *Pekelis v. Transcontinental & Western Air, Inc.,* 187 F.2d 122, 128–129 (2d Cir.), *cert. denied,* 341 U.S. 951, 71 S.Ct. 1020, 95 L.Ed. 1374 (1951); *see also Gillman v. United States,* 53 F.R.D. 316 (S.D.N.Y.1971). To establish a rule forbidding such use would deprive injured claimants of one of the best and most accurate sources of evidence and information.[1]

CBS relies further on certain special rules formulated by courts, such as the rule shielding the findings of special hospital inquiry boards. See *Gillman, supra* at 319 (Report shielded but not statements revealed in course of investigation); *Bredice v. Doctors Hospital,* 50 F.R.D. 249 (D.D.C.1970). It is sufficient answer that these authorities state exceptions to the general rule and not the rule itself.

2. *Report not Excluded in its Entirety as Hearsay Statement of Benjamin.*

■ Although, as defendants argue, out-of-court statements offered to prove the truth of what is asserted in them are generally barred as hearsay (absent a prevailing exception), I agree with plaintiff that his offer of Benjamin's statement against CBS is not hearsay since the statement is "offered against a party [CBS] and is . . . a statement by [its] agent [Benjamin] concerning a matter within the scope of his employment. . . ." Rule 801(d)(2), Fed.R. Evid. It is thus excluded from the hearsay rule as an admission of a party, through its employee.

3. *Inadmissible Matters.*

■ In spite of these observations, I conclude the major part of the Report may not be admitted for a variety of reasons.

a. *Not Relevant.* First, very substantial portions of the Report are not relevant

to the issues in dispute in the libel case. The Report tracks and discusses various charges made against CBS, primarily by TV Guide. These charges address different standards and criteria than those involved in a libel suit.

Thus the Report addresses whether the broadcast was "fair and balanced" and whether supporters of Westmoreland's side of the dispute were given fair opportunity to respond to the charges of others. Views are expressed on these questions by Benjamin and by persons Benjamin interviewed.

■ The fairness of the broadcast is not at issue in the libel suit. Publishers and reporters do not commit a libel in a public figure case by publishing unfair one-sided attacks. The issue in the libel suit is whether the publisher recklessly or knowingly published false material. The fact that a commentary is one sided and sets forth categorical accusations has no tendency to prove that the publisher believed it to be false. The libel law does not require the publisher to grant his accused equal time or fair reply. It requires only that the publisher not slander by known falsehoods (or reckless ones). A publisher who honestly believes in the truth of his accusations (and can point to a non-reckless basis for his beliefs) is under no obligation under the libel law to treat the subject of his accusations fairly or evenhandedly.

The jury would not be permitted to consider whether the publisher had acted fairly or unfairly—only whether he acted in reckless or knowing disregard of the truth. Accordingly, the extensive discussions and expressions of opinion in the Benjamin Report of fairness and related subjects cannot properly be brought before the jury.

The Report considers and discusses a number of other controversies that are irrelevant to the trial. Among the issues considered are whether CBS violated its rules and guidelines by permitting Adams to rehearse his interview, by permitting

---

1. To a limited extent when such reports are prepared "in anticipation of litigation," they are shielded from discovery by Rule 26(b)(3) Fed.R. Civ.P. and the work product rule, unless the adverse claimant can demonstrate a "substantial need."

Allen to be interviewed twice and to view film clips of other interviews, and by failing to identify Adams as a paid consultant. If it is the case that various internal rules of CBS were broken in the making of the documentary, that fact has no bearing on whether the documentary was made in reckless or intentional disregard of the truth. The fact of the violation of rules is not relevant to any issue in the lawsuit. Even assuming the purpose of the guidelines was to promote the integrity of broadcasts, the fact that what was done violated a rule has no tendency to prove knowing or reckless falsity. What was done may be proved, and the jury may consider whether these acts indicate knowing or reckless falsehood. What may not be proved is that these acts violated rules.

To show such violation of rules might indeed show recklessness of a different sort—not recklessness as to truth. It might therefore prejudice the jury against the defendants. Even if some marginal relevance can be found, it is far outweighed by the potential for misunderstanding, confusion and prejudice. The fact that those rules or guidelines were broken may not be shown to the jury.[2]

b. *Hearsay.* Although the Report is not to be considered hearsay *in its entirety* to the extent that it constitutes a statement offered against CBS made by its employee concerning matters within the scope of his employment, substantial portions of the document are, nonetheless, excludable as hearsay (even after plaintiff's deletions). These include instances in which Benjamin quotes assertions by others in circumstances that are not excepted from the hearsay rule.

Examples are quotations from Lyndon Johnson concerning his readiness for Tet, quotations of a military historian on military procedure, assertions of fact by Benjamin based directly or indirectly on sources external to CBS and on sources lacking personal knowledge of the fact asserted, and quotations by Benjamin of CBS' employees where the statement quoted would be hearsay if that employee took the stand to testify to it. See generally *Litton Systems, Inc. v. American Tel. & Tel. Co.,* 700 F.2d 785, 816–17 (2d Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 984, 79 L.Ed.2d 220 (1984); *Northern Oil Co. v. Socony Mobil Oil Co.,* 347 F.2d 81 (2d Cir.1965).

Hearsay also occurs where the Report quotes charges from TV Guide. As noted above, plaintiff has sought to obviate this problem by recasting these accusations and assertions as questions.

There may well be instances in which it is appropriate to so recast a written document in order to make admissible matters comprehensible while avoiding hearsay. The use of this device in plaintiff's document far exceeds such justification. The recasting of accusations as questions does not disguise the fact that someone has made the accusation or raised the question (else why would Benjamin be discussing it). To place before the jury this lengthy list of accusatory questions would convey only hearsay and prejudice without communicating competent evidence tending to establish any fact in dispute.

c. *Opinion Matters.* In numerous instances, the Report expresses Benjamin's opinion in a manner that would not be permitted if Benjamin were called to testify. There is no reason why Benjamin's written report should be admitted to convey such opinions as Benjamin would not be permitted to testify to. The Report also quotes others in their expression of opinions that they would not be permitted to testify to. (See, as an example, Benjamin's assertion that "Robert Komer was a special ambassador to LBJ" and "as such," (apparently quoting General Davidson)

---

2. The discussions noted above are merely examples and not an exhaustive list of the observations and discussions in the Report that are irrelevant to the issues in the lawsuit. I do not mean to suggest by the discussion above that all statements contained in these portions of the Report are excluded because they fall within a generally irrelevant discussion. Scattered within these discussions are instances of admissible evidence of relevant facts. These are discussed below.

"had a vital interest in enemy strength figures." Benjamin Report, p. 40.) See generally *Litton, supra; Oreck Corp. v. Whirlpool Corp.,* 639 F.2d 75, 81 n. 3 (2d Cir.1980); *Northern Oil, supra.*

4. *Matters Not Inadmissible But Equally Available from Other Sources.*

Substantial portions of the Benjamin Report are not inadmissible as hearsay but are equally available from other sources or are already in evidence. These include quotations from Crile's "White Paper," from the broadcast transcript and from notes taken by Adams and Crile. Assuming these passages are relevant and do not suffer from any other evidentiary defect, they are admissible in the original form. The fact that they are quoted in the Benjamin Report adds nothing to their status as evidence.

\* \* \*

The matters reviewed above and found to be either inadmissible or admissible without reference to the Report cover a very substantial portion of the document offered by plaintiff. They constitute sufficient reason to sustain defendants' objection to the document as offered by plaintiff.

I do not mean by this ruling to suggest that nothing contained in the Report may be received. There are interspersed in its text a substantial number of items which would be appropriate for receipt in evidence. These include (a) Benjamin's report of relevant admissions made to him by the individual defendants Wallace, Crile and Adams, (b) Benjamin's report of relevant admissions by individual defendants made to others and repeated to Benjamin, (c) Benjamin's report of relevant statements made to him by other employees of CBS if within such employees' scope of employment and competence, and (d) assertion by Benjamin of various facts learned by him within his competence.

It is my impression from discussions with counsel that the great majority of the admissible matters contained in the Report are not disputed by the defendants. Facts asserted in the Report such as that Allen was interviewed twice, that Allen was

shown other interviews, that Adams was not identified in the broadcast as a paid consultant, which sources were and were not interviewed and which were and were not used—all this I believe is conceded to be true (although its relevance may be contested). Also, I assume many of the statements reported by Benjamin to have been made by individual defendants are not contested.

Plaintiff should identify to CBS with precision each line of the Benjamin Report that it wishes to offer. Defendants may prepare if they so choose a formal admission of any such facts that might obviate the need for their being introduced through the Report.

SO ORDERED.