CITY OF BETHEL, Appellant,

v.

Catherine PETERS, Appellee.

No. S–10864.

Supreme Court of Alaska.

Sept. 3, 2004.

Frank S. Koziol, Law Office of Frank S. Koziol, Anchorage, for Appellant.

Christine S. Schleuss, Friedman, Rubin & White, Anchorage, and Myron Angstman, Bethel, for Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, and FABE, Justices.

## OPINION

FABE, Justice.

## I. INTRODUCTION

This appeal of a jury verdict in a tort suit against the City of Bethel presents the question whether recommendations for action contained in a post-accident report are excludable as subsequent remedial measures under Alaska Rule of Evidence 407, the question whether the superior court properly submitted the issue of severe disfigurement to the jury, and a question concerning inappropriate arguments during the plaintiff's closing. Because the superior court did not err in its rulings, we affirm the judgment.

## II. FACTS AND PROCEEDINGS

### A. Factual History

On July 14, 2000, Catherine Peters fell in the shower area of Bethel's city-owned senior center. She suffered multiple fractures of her right leg. She required surgery in Anchorage to place both internal and external hardware in her leg and for a bone graft. Her recovery involved several return trips to Anchorage to remove the external fixator apparatus and for follow-up exams. Her leg remains bent and her activity has been curtailed.

Following Peters's accident, Louise Charles, the City's director of senior services, prepared an "Accident/Incident Investigation Report," in which she recommended the installation of safety bars in the shower area. Safety bars were later installed. Peters sued the City in December 2000, alleging negligence in its maintenance of the shower.

## B. Procedural History

The case was tried before a jury in August 2002. The thrust of Peters's theory of the case was that safety bars in the shower would have prevented the fall and that the City was therefore negligent in failing to install the safety bars before the accident. To this end, Peters introduced into evidence a redacted version of the accident report in which the section detailing the "corrective action taken" was blacked out. Peters's attorney also questioned Charles and senior center administrative assistant Bev Bell, asking each whether soon after the accident she thought safety bars should be installed, and whether she had thought of it before the accident. In response to a question about her pre-accident thoughts, Charles volunteered that safety bars had in fact been installed after the accident. In his closing argument, Peters's attorney argued that the City should have known before the accident that safety bars would make the shower area more safe. He mentioned the recommendations Louise Charles made in her report but never discussed the City's actual installation of the bars after Peters's fall.

In addition to the issues of negligence and contributory negligence, the superior court submitted to the jury, over the City's objection, the question whether Peters suffered a severe disfigurement. The jury found that the City was eighty-seven percent at fault for the accident and that Peters did suffer severe disfigurement, awarding $575,000 in noneconomic damages. The City appeals from the jury verdict, claiming that Alaska Rule of Evidence 407 should have barred the admittance of the accident report, that the issue of severe disfigurement should not have gone to the jury, and that the court's failure to correct a pair of statements made during Peters's closing argument was plain error.

## III. DISCUSSION

### A. Standards of Review

 The superior court's decision to admit evidence is reviewed for abuse of discretion.[1] The correct scope or interpretation of a rule of evidence creates a question of law "to which this court applies its independent judgment, adopting the rule most persuasive in light of reason, precedent and policy."[2] The superior court's decision whether to give the issue of severe disfigurement to the jury, like the parallel determination of severe emotional distress in an intentional infliction of emotional distress action, is reviewed for abuse of discretion.[3] Statements in closing arguments to which opposing counsel made no objection are reviewed for plain error.[4]

### B. The Superior Court Properly Admitted the Recommendation Section of the Post–Accident Report.

 Alaska Rule of Evidence 407 provides, in pertinent part: "When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence . . . ." Evidence of subsequent remedial measures is relevant to the question of negligence, but it is excluded in order to "encourag[e] defendants to take safety precautions after accidents."[5] The City claims that the rule should have barred the admission of the "Accident/Incident Investigation Report" completed by Louise Charles. The report includes sections headed "What Should Be Done?" and "Corrective Action Taken." The superior court allowed the introduction of the report with the "Corrective Action" section redacted. In the "What Should Be Done?" section, which remained intact in the admitted version of the report, Charles wrote that "[i]t would be helpful, to elders, if at least 3 more safety bars were

---

1. *Hawley v. State,* 614 P.2d 1349, 1361 (Alaska 1980).

2. *State v. Coon,* 974 P.2d 386, 389 (Alaska 1999) (quotation marks and citation omitted).

3. *See Wal–Mart, Inc. v. Stewart,* 990 P.2d 626, 635 (Alaska 1999) (intentional infliction of emotional distress instruction).

4. *See Clary Ins. Agency v. Doyle,* 620 P.2d 194, 204 (Alaska 1980).

5. *Robles v. Shoreside Petroleum, Inc.,* 29 P.3d 838, 845 (Alaska 2001); *see also* Alaska R. Evid. 407, commentary.

installed on the walls in the sauna area and in the bathroom areas. Elders could then support themselves if necessary."

Evidence showing that the City followed Charles's recommendation and installed the safety bars is plainly barred by the rule. The City initially argues that the recommendation for safety bars in the report is this type of evidence and claims that the report "reveals the actual safety improvement later installed." But the redacted report only indicated that Charles suggested more safety bars. It did not reveal to the jury that the City followed her advice, and therefore was not excludable as evidence of the installation of the safety bars.[6] Rule 407 excludes the challenged section of the report only if the recommendations themselves are covered by the rule.

Our previous cases applying this rule have concerned concrete fixes like placing barriers and flashing lights around a hole where an employee had been injured[7] or salting and sanding an allegedly icy walkway after someone had fallen;[8] we have never considered whether Rule 407 reaches a section of a post-accident report containing an investigation into an accident's causes or a recommendation for an improvement. Many courts applying analogous rules of evidence have held that the rule's scope is limited to improvements actually implemented.[9] These courts rely in part on the rule's phrase "measures are taken," reasoning that "[r]emedial mea-sures are those *actions* taken to remedy any flaws or failures."[10] Under this reasoning, an investigation or recommendation is not a concrete action; a report on these activities "by itself ... 'would' not 'have made the event less likely to occur.'"[11] These courts therefore do not exclude reports of post-accident investigations and recommendations, often among "the best and most accurate sources of evidence and information" for injured parties.[12]

Other courts disagree, holding that evidence of the parts of a report detailing investigatory findings and recommendations should be excluded as subsequent remedial measures.[13] These latter courts rely on the sensible proposition that in many cases, "the investigation is the prerequisite to any remedial safety measure."[14] They reason that admitting such post-accident evidence would discourage defendants from carefully investigating accidents and considering how to prevent them in the future; they would then be less equipped to make the safety improvements the rule is designed to promote.[15] This broader interpretation of the rule's exclusionary scope may advance its goals, but it collides with another evidentiary policy, the principle of wide admission of relevant evidence, and with the language of the rule.

■ Under Rule 402, our "Rules of Evidence start from the proposition that all rele-

**6.** Cf. *Rocky Mountain Helicopters, Inc. v. Bell Helicopters Textron*, 805 F.2d 907, 918 (10th Cir. 1986) (holding that post-accident test is not evidence that tested part was redesigned).

**7.** *Exxon Corp. v. Alvey*, 690 P.2d 733, 740–41 (Alaska 1984).

**8.** *Agostinho v. Fairbanks Clinic P'ship*, 821 P.2d 714, 716 (Alaska 1991).

**9.** E.g., *McFarlane v. Caterpillar, Inc.*, 974 F.2d 176, 181–82 (D.C.Cir.1992); *Prentiss & Carlisle Co. v. Koehring–Waterous Div. of Timberjack, Inc.*, 972 F.2d 6, 9–10 (1st Cir.1992); *Benitez–Allende v. Alcan Aluminio do Brasil, S.A.*, 857 F.2d 26, 33 (1st Cir.1988); *Rocky Mountain Helicopters*, 805 F.2d at 918; *Westmoreland v. CBS Inc.*, 601 F.Supp. 66, 67–68 (S.D.N.Y.1984); *Fox v. Kramer*, 22 Cal.4th 531, 93 Cal.Rptr.2d 497, 994 P.2d 343, 350–53 (2000).

**10.** *Rocky Mountain Helicopters*, 805 F.2d at 918 (emphasis added); see also 2 JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S FEDERAL EVIDENCE § 407.06[1], at 407–27 to 407–28 (Joseph M. McLaughlin ed., 2d ed. 2004) ("It is only if changes are *implemented* ... that the goal of added safety is furthered.") (emphasis added).

**11.** *Benitez–Allende*, 857 F.2d at 33 (quoting Fed. R.Evid. 407).

**12.** *Westmoreland*, 601 F.Supp. at 68.

**13.** E.g., *Maddox v. City of Los Angeles*, 792 F.2d 1408, 1417 (9th Cir.1986); *Martel v. Mass. Bay Transp. Auth.*, 403 Mass. 1, 525 N.E.2d 662, 664 (1988).

**14.** *Martel*, 525 N.E.2d at 664.

**15.** See id.

vant evidence is admissible." [16] Rules of exclusion like the one we consider today are merely exceptions to this general rule. Post-accident investigations and recommendations are often relevant to the issue of negligence and, by revealing facts about the causes of an accident and the defendant's concerns about it, may be particularly useful to factfinders.[17] The general presumption in favor of admissibility strongly suggests, therefore, that such evidence should be admitted, despite any possible disincentive to safety improvements.

Between these two competing policies, the language of the rule favors admissibility. Rule 407 prohibits evidence of "measures" that have been "taken." We take "measures" to mean concrete actions, and to leave outside the rule's prohibition preliminary investigations and recommendations pointing toward those actions.[18] Even if post-accident investigations and reports were considered "measures," the rule would not reach them. The rule excludes "subsequent measures" that would have reduced the likelihood of the accident if they had been "taken previously," meaning before the accident. "One cannot investigate an accident before it occurs, so an investigation and report ... cannot be a measure that is excluded." [19] The language of Rule 407 and the general presumption of admissibility laid down by Rule 402, along with persuasive authority from other courts, compel us to hold that evidence of post-accident investigations and recommendations are not automatically excluded as subsequent remedial measures.[20]

Like all other evidence, investigations and recommendations are subject to the balancing test of Alaska Rule of Evidence 403, which provides that relevant evidence "may be excluded if its probative value is outweighed by the danger of unfair prejudice." The relation between admissible investigations and recommendations on the one hand and excluded measures on the other requires particular care in this balancing. If the jury is given evidence of the recommendations but not of the actual fix, there is a danger that jurors may draw the unfair inference that the recommendations were ignored. In deciding whether or not to admit recommendations, the trial court should carefully consider the likelihood of this inference and the prejudice it would cause. In this case, the superior court weighed relevance against prejudice and determined that Charles's report, redacted to exclude evidence of the remedial measures taken, was admissible. We find no error in its determination.[21]

### C. The Superior Court Did Not Abuse Its Discretion in Submitting the Question of Severe Disfigurement to the Jury.

Under AS 09.17.010(b), a plaintiff in a personal injury or wrongful death action may recover no more than $400,000 in com-

16. *United States v. Cruz–Garcia*, 344 F.3d 951, 954 (9th Cir.2003) (discussing Federal Rules of Evidence) (quotation marks omitted); *see also Bingaman v. State*, 76 P.3d 398, 408 (Alaska App.2003) ("The first governing principle [of Rule 402] is that relevant evidence is presumptively admissible."); *Denison v. Anchorage*, 630 P.2d 1001, 1003 (Alaska App.1981) ("Rule 402 embodies a basic preference for admission of all relevant evidence ....").

17. *See Westmoreland*, 601 F.Supp. at 68.

18. *See Rocky Mountain Helicopters*, 805 F.2d at 918; *Fasanaro v. Mooney Aircraft Corp.*, 687 F.Supp. 482, 487 (N.D.Cal.1988); WEINSTEIN & BERGER, *supra* note 10, § 407.06[1], at 407–27 to 407–28.

19. *Ensign v. Marion County*, 140 Or.App. 114, 914 P.2d 5, 7 (1996); *see also Fox*, 93 Cal. Rptr.2d 497, 994 P.2d at 351.

20. In some cases, a recommendation and a remedial measure may be one and the same, as when the recommendation itself represents a change in policy. *E.g., Complaint of Consolidation Coal Co.*, 123 F.3d 126, 136 n. 9 (3d Cir. 1997) (holding that " 'safety alert,' ... designed to alert ... employees to a potential danger ... and advise them of measures to avoid this danger .... is inherently a subsequent remedial measure"). This is not such a case—after Charles completed her report and recommendations, the City still had to act to implement her suggestions.

21. Because we hold that Rule 407 does not exclude such recommendations, we do not need to decide whether they could have been admitted for any purpose other than to prove negligence.

pensation for noneconomic damages. This cap is raised to $1,000,000 if "the damages are awarded for severe permanent physical impairment or severe disfigurement."[22] Over the City's objection, the superior court instructed the jury on severe disfigurement. The jury found by special interrogatory that Peters had suffered severe disfigurement and awarded $575,000 in noneconomic damages. The City challenges the superior court's submission of the issue to the jury.

The superior court must make a threshold determination of severe disfigurement before submitting the issue to the jury.[23] The court should withhold the issue from the jury if no reasonable juror could find that the plaintiff suffered from severe disfigurement;[24] otherwise the question should go to the jury.[25] We review this determination for abuse of discretion,[26] reversing the superior court only when we are "left with the definite and firm conviction, after reviewing the whole record, that [it] erred in its ruling."[27] The deferential standard of review and the substantive standard combine to give the City a difficult task in convincing us that the superior court abused its discretion. We will reverse the court's decision to send the question of severe disfigurement to the jury only if we possess a definite and firm conviction that no reasonable juror could think that Peters's injury was a severe disfigurement.[28]

The first question we must answer is whether evidence concerning the state of Peters's leg before it was fully healed may play a role in this determination. Peters calls our attention to photographs taken during her recuperation, which lasted several months and involved at least four trips to the Alaska Native Medical Center in Anchorage. The photos show her leg with an array of pins and rods attached. The statute requires "severe permanent physical impairment or severe disfigurement" to break the damage cap;[29] the presence of the word "permanent" in the impairment clause and its absence in the disfigurement clause of the same statute imply that a severe disfigurement need not be permanent to support damages beyond the cap. However, a reasonable healing period must be allowed before disfigurement may be assessed. Otherwise, a plaintiff might, for example, claim to be disfigured based on his condition immediately after being injured when a wound that will eventually heal completely still appears grisly. Evidence of the plaintiff's injury before this healing period has passed is admissible to the extent that it provides information or inferences about its ultimate condition. It is unclear how the superior court used the various photographs in evidence, but in reviewing its threshold determination, we will only consider evidence of the long-term state of Peters's leg.

The photographs taken after Peters's recovery show her leg bent in a drastic angle at the knee, which itself is marred by significant scarring. Testimony from Peters and her daughter demonstrate that the bend

22. AS 09.17.010(c).

23. Cf. Meidinger v. Koniag, Inc., 31 P.3d 77, 87 (Alaska 2001) ("The trial court must make a threshold determination whether the severity of the emotional distress and the conduct of the offending party warrant an instruction on intentional infliction of emotional distress.") (quotation marks omitted).

24. See Nelson v. Progressive Corp., 976 P.2d 859, 868 (Alaska 1999) (upholding directed verdict that no severe distress occurred because "no reasonable jury could make the requisite finding"); Teamsters Local 959 v. Wells, 749 P.2d 349, 358 n. 14 (Alaska 1988) (upholding determination that severe distress was established as a matter of law where "a reasonable jury would not have differed"); State, Dep't of Corrections v. Johnson, 2 P.3d 56, 64 (Alaska 2000).

25. See Wal–Mart, Inc. v. Stewart, 990 P.2d 626, 635 (Alaska 1999) ("If reasonable jurors could differ as to whether the evidence adduced at trial would satisfy [the elements of the tort of intentional infliction of emotional distress (IIED)], the superior court is required to submit the IIED claim to the jury.") (quotation marks omitted).

26. See id.

27. Samaniego v. City of Kodiak, 80 P.3d 216, 218–19 (Alaska 2003) (quotation marks omitted).

28. See Wal–Mart, 990 P.2d at 635.

29. AS 09.17.010(c).

in her leg is constant, if not permanent. Conceding that Peters suffers a disfigurement, the City essentially asserts that it is not severe enough to warrant submitting the question to the jury. The statute does not define "severe disfigurement," and no Alaska cases have dealt with the issue. A disfigurement is "[t]hat which impairs or injures the beauty, symmetry, or appearance of a person or thing; that which renders unsightly, misshapen, or imperfect." [30] Although Peters notes that her walk is significantly slowed by the injury, that her confidence is shaken, and that she can no longer take part in activities like berry picking or boating, disfigurement concerns the outward appearance of a person's body, not its function.[31] We thus consider only the fact that Peters's leg is bent and scarred, not the injury's effect on her ability to walk or take part in other activities.[32] Because the definition of disfigurement depends on judgments of a plaintiff's appearance or unsightliness, it must be determined by an objective test gauging the views of the reasonable person. If a reasonable person would see the injury as detracting from the plaintiff's appearance, the injury has caused disfigurement.[33] Disfigurement is severe if a reasonable person would find that the injury mars the plaintiff's physical appearance and causes a degree of unattractiveness sufficient to bring negative attention or embarrassment.[34] Contrary to the City's suggestion, a plaintiff is not required to introduce evidence showing how particular people react to the injury; the court and the jury themselves supply the views of the reasonable person.

In making the threshold determination of whether to submit the question of severe disfigurement to the jury, a trial court must balance the twin objectives of restraint and fairness highlighted by the legislature's declaration of the purposes of the tort reform act that included the damage cap: "discouraging frivolous litigation ... without diminishing the protection of innocent Alaskans' rights to reasonable, but not excessive, compensation for tortious injuries." [35] The legislature made a policy determination that only those plaintiffs with severe disfigurements should recover beyond the cap. The question should go to the jury whenever the disfigurement could reasonably be characterized as severe. We cannot say that the evidence of Peters's contorted and scarred leg provides us with a definite and firm conviction that no reasonable juror could think it a severe disfigurement. The superi-

---

30. BLACK'S LAW DICTIONARY 420 (5th ed.1979).

31. *See Nelson v. Myers*, 146 Mich.App. 444, 381 N.W.2d 407, 408 (1985) ("Whether an injury amounts to a permanent serious disfigurement depends on its physical characteristics rather than its effect on the plaintiff's ability to live a normal life.") (quotation marks omitted).

32. An injury's effect on a plaintiff's abilities is properly the subject of an instruction on severe permanent physical impairment, also under AS 09.17.010(c). In the present case, the superior court refused to give such an instruction, a decision Peters does not challenge.

33. *Cf. Tuhy v. Schlabsz*, 574 N.W.2d 823, 825 (N.D.1998) (holding that scar that could not be seen by trial court upon "close observation" of plaintiff's lip was not "serious and permanent disfigurement"); *Smith v. Higgins*, 819 S.W.2d 710, 712 (Ky.1991) ("[A]ny scar capable of ordinary perception or which produces ongoing personal discomfort constitutes disfigurement."); *Kanaziz v. Rounds*, 153 Mich.App. 180, 395 N.W.2d 278, 281 (1986) (holding scar that is not "immediately and readily noticeable" is not permanent serious disfigurement).

34. *Cf. Falcone v. Branker*, 135 N.J.Super. 137, 342 A.2d 875, 880 (1975) (holding that to qualify as permanent significant disfigurement, "a facial scar has to mar the natural expression so as to attract attention and should be materially disfiguring"); *cf. also, e.g., McCabe v. Boyce*, 2 A.D.3d 1375, 770 N.Y.S.2d 495, 497 (N.Y.App.Div.2003) (reversing determination that "very, very slight" scar was significant disfigurement); *Waldron v. Wild*, 96 A.D.2d 190, 468 N.Y.S.2d 244, 247 (N.Y.App.Div.1983) ("A disfigurement is significant if a reasonable person viewing the plaintiff's body in its altered state would regard the condition as unattractive, objectionable or as the subject of pity or scorn.") (quotation marks omitted); *Beazley v. Pierce*, 19 Pa. D. & C.3d 729, 733, 1981 WL 743 at 4 (1981) (requiring "more than a trifling mark discoverable only on close inspection" for an injury to qualify as "cosmetic disfigurement [which] is permanent, severe and irreparable").

35. Ch. 26, § 1(1), SLA 1997 (Alaska Statutes, Temp. & Special Acts & Resolves 1997).

or court did not abuse its discretion in submitting the question to the jury.

### D. There Was No Plain Error Concerning Peters's Closing Argument.

In his closing arguments, Peters's attorney made two arguments that the City claims warrant reversal. The City did not object to the statements at the time, so the only decision of the trial court available for our review is the court's failure to take corrective action on its own motion. Because the City waived its objections by its silence at trial, we review the trial court's inaction only for plain error.[36] "[P]lain error exists where an obvious mistake has been made which creates a high likelihood that injustice has resulted."[37] Before this court will notice and correct a waived error, the likelihood of injustice must be clear, such that we do not need to "speculate on whether the error altered the result."[38]

The City first claims that Peters's attorney improperly invited the jury to infer liability because Louise Charles, the City director of senior services, rather than the city manager, was Bethel's representative at the defendant's counsel table. "[The city manager]'s not sitting there," Peters's attorney said, "because it's the belief of the city that you'd be much more likely to award damages to Mrs. Peters if the city manager was sitting there." Although the statement is inappropriate and relies on facts that are neither relevant nor admitted into evidence, we will not correct the trial court's failure to take corrective action sua sponte. The City's claim that the statement created a high likelihood of injustice because Peters's strategy was to "absolve[ ] . . . Charles[ ] from responsibility and blame" is unpersuasive. We cannot determine whether the jury relied on this "absolution" argument in its verdict without impermissible speculation. There was no plain error in allowing this statement to pass.

In the second incident, Peters's attorney derided the $30,000 damage figure suggested by the City's attorney in his closing, saying it "[m]akes a guy wonder how much Mr. Koziol makes in that year when [Peters is lying] in bed, you know? . . . It's an insult to suggest [$30,000 is] what her injury was." The City asserts that the suggestion about an attorney's salary is "so beyond the boundary of reasonable argument as to constitute plain error." We agree that the statement was improper and an undue personal attack on the City's attorney, and if the City had made a contemporaneous objection, the superior court should have taken corrective action. But the City has not shown that the statement caused a high likelihood of injustice or that the jury would have come to a different conclusion without the inappropriate remark. The superior court thus did not commit plain error in failing to take corrective action in the absence of an objection.

### IV. CONCLUSION

For these reasons, the judgment of the superior court is AFFIRMED.

CARPENETI, Justice, not participating.

---

**36.** *See Clary Ins. Agency v. Doyle,* 620 P.2d 194, 204 (Alaska 1980).

**37.** *State Farm Mut. Auto. Ins. Co. v. Weiford,* 831 P.2d 1264, 1270 (Alaska 1992) (quotation marks and citation omitted).

**38.** *Jaso v. McCarthy,* 923 P.2d 795, 800 (Alaska 1996) (quotation marks omitted).