Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/16/2020 09:08 AM CDT

Teresa Walker, appellant, v. BNSF
Railway Company, a Delaware
corporation, appellee.

___ N.W.2d ___

Filed July 24, 2020.    No. S-19-331.

1. **Trial: Evidence: Appeal and Error.** A trial court has the discretion to determine the relevancy and admissibility of evidence, and such determinations will not be disturbed on appeal unless they constitute an abuse of that discretion.

2. **Rules of Evidence: Hearsay: Appeal and Error.** Apart from rulings under the residual hearsay exception, an appellate court reviews for clear error the factual findings underpinning a trial court's hearsay ruling and reviews de novo the court's ultimate determination to admit evidence over a hearsay objection or exclude evidence on hearsay grounds.

3. **Evidence: Appeal and Error.** In a civil case, the admission or exclusion of evidence is not reversible error unless it unfairly prejudiced a substantial right of the complaining party.

4. **Judgments: Words and Phrases: Appeal and Error.** An abuse of discretion, warranting reversal of a trial court's evidentiary decision on appeal, occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.

5. **Trial: Evidence: Testimony.** When the information is, for the most part, already in evidence from the testimony of witnesses, the exclusion of the evidence is not prejudicial.

Appeal from the District Court for Scotts Bluff County: Andrea D. Miller, Judge. Affirmed.

Kyle J. Long and Robert G. Pahlke, of Robert Pahlke Law Group, for appellant.

Chad M. Knight and Nadia H. Patrick, of Knight, Nicastro & MacKay, L.L.C., for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

PER CURIAM.

## NATURE OF CASE

Theresa Walker was injured while working for BNSF Railway Co. (BNSF) when a forklift she was driving tipped over while she was lifting a locomotive traction motor onto a flatbed trailer. Walker filed this negligence action against BNSF in the district court for Scotts Bluff County under the Federal Employers' Liability Act, 45 U.S.C. § 51 et seq. (2012). After the exclusion of some of her evidence about which she complains, the jury returned a verdict for BNSF. Because we conclude the exclusion of evidence did not unfairly prejudice Walker, we affirm.

## FACTS

On November 4, 2010, Walker, a BNSF employee with forklift training, was associated with the BNSF facility in Alliance, Nebraska. She was injured when the forklift she was driving tipped over while she was lifting a load. Walker alleged that she drove the forklift into position; raised the traction motor into the air; leveled the forks; and was waiting to move over the final deposit point, when the forklift tipped forward. The forklift was a Taylor Big Red forklift (Big Red) owned by BNSF and manufactured to load, unload, and move locomotive traction motors. A traction motor is a large electric motor on each wheel of a locomotive.

Walker brought this action under the Federal Employers' Liability Act, alleging BNSF was negligent. Specifically, she alleged that the railroad was negligent because it (1) provided equipment that was not in safe operating condition; (2) altered and modified Big Red by affixing a metal pallet attachment; (3) failed to remove Big Red from service; and (4) failed

to provide reasonably safe tools, equipment, conditions, and methods to do the work.

Big Red was manufactured by Taylor to load, unload, and move locomotive traction motors with a capacity of 18,425 pounds at a 24-inch load center. After receipt from Taylor, BNSF made and affixed a metal pallet attachment to Big Red, which caused the forklift to carry traction motors more than 64 inches away from its mast and potentially changed the capacity and dynamics of the forklift.

Walker had worked for BNSF since 1997. She received training on forklift operations, and throughout her tenure at BNSF, she underwent periodic recertification in forklift operation that included practical application and testing. Walker had used Big Red to load traction motors onto truck beds on a daily basis since 2009. Walker returned to work at BNSF in September 2010 after a leave of absence, and she received mandatory recertification training on forklift operations. She also received training specific to Big Red.

Before July 2010, BNSF employees at the Alliance facility loaded only traction motors manufactured by EMD. In the months before the injury, BNSF started loading a traction motor manufactured by G.E. that was heavier. A traction motor manufactured by EMD weighed approximately 11,800 pounds, whereas a traction motor manufactured by G.E. weighed about 13,500 pounds. BNSF claimed that Walker had used Big Red to transport the heavier G.E. motors before her injury. Walker testified that she did not know if she had ever loaded a heavier G.E. traction motor before her injury. She claimed that she was not told of the weight difference between G.E. and EMD traction motors until after her injury.

A BNSF internal personal injury report completed shortly after the incident concluded that Big Red was safe to operate and that the incident was the result of operator error by Walker. Soon after that report was completed, BNSF's representatives contacted Big Red's manufacturer, Taylor, to inquire about continued use of the attachment. In response to BNSF's

inquiry, an unidentified employee of Taylor stated that Big Red may become overloaded when it is used with the BNSF's metal pallet loaded with a G.E. traction motor.

Bret Bridges, BNSF's designee for purposes of a Neb. Ct. R. Disc. § 6-330(b)(6) (rev. 2016) deposition, testified regarding the investigation following Walker's injury. Bridges stated that BNSF had determined that the forklift tipped over due to operator error. As relevant to this appeal, Bridges was also questioned at length about the metal pallet attachment and the potential to exceed the capacity of Big Red. Bridges agreed during his deposition that BNSF's communications with Taylor "caused the BNSF to determine" that transporting G.E. traction motors with the metal pallet "could exceed the capacity" of Big Red, causing a risk of the forklift's tipping. Below are several relevant portions of Bridges' deposition testimony, which Walker claims are admissions relevant to her theory of recovery and formed the basis for which she sought similar testimony at trial. The deposition was received for the record after the district court ruled that Bridges' challenged testimony would be excluded.

Q. Was the bracket found to be defective?

A. The bracket was not found to be defective. But if it's used improperly or out away from the mast, it does change the center of gravity for the forklift.

Q. Did the BNSF find the bracket to be defective?

A. The bracket in and of itself is a piece of steel. But if you use the furthest pick point away from the mast, you can exceed the lifting capacity of the forklift.

. . . .

Q. Would you agree that the installation of the bracket on the Taylor Big Red forklift shifted the load center away from the mast?

A. Yes.

Q. And agree that the bracket that was used on the traction motor's axles — agree that when the bracket was used, the traction motor's axle rested more than 70 inches away from the mast?

A. Yes; but I don't know that the axle is the center of gravity.

Q. Fair enough. And I'm not trying to say that it was; I'm just trying to identify that the axle was there.

A. Based on measurements, yes.

Q. And do you agree that when the traction motor was loaded in this position, the combined weight of the traction motor and the bracket exceeded the capacity of the Taylor forklift?

A. Yes, that is my belief.

. . . .

Q. And do you agree that when the bracket was used in a position that the traction motor was lifted using the bracket that a GE traction motor exceeded the capacity of the forklift?

. . . .

A. As we previously discussed, I do believe it exceeded the lifting capacity.

Q. . . . And you agree that every time an employee lifted a traction motor with that setup, he or she was exceeding the capacity of the forklift.

. . . .

A. Yes.

Q. . . . And so every time that an employee lifted a traction motor, because they were exceeding the capacity, there was risk of the forklift tipping.

[Objection.]

A. I think I have a two-part answer for that. I think that, one, it depends upon height and pitch of the traction motor. So when the load is — the mast is all the way against the forklift and it's only this high . . . off the ground, I don't believe that it would tip the traction motor. I think at a very elevated position with the forks tipped forward that obviously it will tip the traction motor.

BNSF filed a motion in limine seeking, inter alia, to exclude evidence of subsequent remedial measures to prove

negligence, including "removal of the forklift and/or its rack from service, and . . . use of a different forklift and/or rack" following Walker's accident. Walker stipulated to this exclusion, and the district court granted the motion with respect to evidence of subsequent remedial measures.

At trial, BNSF asserted that moving the GE traction motor with the attachment did not exceed Big Red's capacity. In its opening statement, BNSF explained that "[y]ou have a 16,000 capacity forklift carrying about 13,000 pounds of weight and you add in the weight of that metal pallet and you get maybe up to 14,000 pounds of weight. You are a ton underneath the load capacity of this forklift." BNSF introduced evidence that the forklift was not over its capacity at the outset of moving a G.E. traction motor with the attachment.

Bridges, whose testimony is quoted above, was designated as BNSF's representative at trial. Several times at trial, Walker attempted to elicit Bridges' admissions that the combined weight of the attachment and G.E. traction motor exceeded Big Red's capacity, causing an overloaded condition and risk of tipping. Walker asked him, "And, would you agree that BNSF and you as their corporate spokesman believe that the bracket caused or the attachment caused the overload[?]" BNSF objected, claiming that postinjury conversations with Taylor and conclusions drawn therefrom by BNSF were inadmissible evidence of subsequent remedial measures made to remedy flaws or failures in the forklift operations. BNSF also argued that Walker's questions asked for hearsay, because they were attempts to relay statements from the manufacturer to BNSF and Bridges, all to the effect that BNSF had learned from the manufacturer that the forklift was overloaded. In response, Walker argued BNSF had ultimately concluded and believed that the attachment caused the overload condition and admitted to its understanding in the deposition of Bridges, its designee. The court sustained BNSF's objection. Walker attempted to introduce evidence of BNSF's postinvestigation conclusions regarding the overload issue several times,

and the court continued to sustain BNSF's objections. After the district court had excluded Bridges' testimony, the court received the two volumes of the transcripts of Bridges' depositions as an offer of proof.

Walker's theory at trial was that BNSF had negligently modified Big Red, causing an overload condition and tipping leading to injury. Several witnesses for Walker testified that Big Red as modified by BNSF was overloaded. For example, David Danaher, a forensic mechanical engineer and certified professional engineer, opined that the forklift was overloaded regardless of the position of the forklift. Ken Tester, a safety trainer, testified at length about the "removable attachment" modification to the forklift and concluded that "it was just inevitable an accident would happen." He explained that "[w]ith an attachment like an extension, like in the situation where we have here, the load would be different, [its] maximum would not be 18,425 pounds, it would be a lot less." Tester opined that BNSF should have taken measures to prevent overloading prior to the incident and that had it done so, the incident may have been prevented.

BNSF's theory at trial was that Walker operated the forklift in a dangerous manner and was the cause of its instability and accident. In support of its theory, BNSF called Paul Skelton, a truckdriver who was an eyewitness to the incident. Skelton testified that he had picked up traction motors at the Alliance facility "[a] few times" prior to the incident. On the day of the incident, he observed Walker loading the first traction motor onto his flatbed trailer, approximately 40 inches from ground level. He testified that her way of loading struck him as abnormally high because "[n]ormally, they don't raise them that high." He testified that he "expressed a little bit of concern about that" because the forklift had seemed to do "a teeter motion." The first load came down on the trailer "a little hard," and Skelton said he "was worried about the damage to the trailer because these are particularly expensive trailers that we have." After Skelton asked Walker why she raised the load

that high, she said she could not see him. Skelton moved so that they would be able to see each other during the following load.

According to Skelton, Walker brought in the second load high as well. Skelton testified that "it was still raised up considerably higher than it needed to be" but acknowledged it may have been a bit lower than it had been when Walker delivered the first load. He observed the load was higher than his head, and stated he is 5 feet 11 inches tall. Walker began lowering the load and tilting the mast forward to deposit the motor on the trailer. As the load got close to the deck, Skelton noticed there were "boards . . . out of position." Skelton stopped Walker before she set the load down so he could reposition the boards. Walker raised the load back up to around the roof of the forklift cab, and she backed away, to allow Skelton to maneuver the boards. He testified that he observed that the forklift mast was still tipping forward and had not been brought back toward the forklift cab. Skelton was adjusting the boards when he heard the sound of a motor revving and turned and observed the traction motor roll off the front of the forklift and onto the ground. Skelton observed the forklift tilt backward "back down on all four wheels." Skelton testified that Walker's load positioning, including the load height and forward tilting of the mast, was contrary to what he had been taught and had observed in the past at the Alliance facility.

The jury rendered a verdict for BNSF, and the court accepted the verdict and entered judgment. Walker moved for a new trial, which was denied. Walker appeals.

## ASSIGNMENT OF ERROR

Walker claims, summarized and restated, that the district court erred when it excluded evidence of BNSF's admission that the forklift was overloaded and at risk for tipping.

## STANDARDS OF REVIEW

[1] A trial court has the discretion to determine the relevancy and admissibility of evidence, and such determinations

will not be disturbed on appeal unless they constitute an abuse of that discretion. *O'Brien v. Cessna Aircraft Co.*, 298 Neb. 109, 903 N.W.2d 432 (2017).

[2] Apart from rulings under the residual hearsay exception, an appellate court reviews for clear error the factual findings underpinning a trial court's hearsay ruling and reviews de novo the court's ultimate determination to admit evidence over a hearsay objection or exclude evidence on hearsay grounds. *Id.*

[3] In a civil case, the admission or exclusion of evidence is not reversible error unless it unfairly prejudiced a substantial right of the complaining party. *Id.*

[4] An abuse of discretion, warranting reversal of a trial court's evidentiary decision on appeal, occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

ANALYSIS

*Exclusion of Walker's Evidence*
*and Walker's Offers of Proof.*

The central issue in this appeal is generally whether the district court erred when it excluded Walker's evidence, which according to Walker would have shown that a postaccident investigation led BNSF to believe that Big Red as modified by BNSF had been overloaded, leading to the risk of tipping over. Walker specifically claims that Bridges should have been permitted to testify to that effect.

At trial, Walker attempted to question Bridges, BNSF's designee at trial, regarding BNSF's conclusions and belief that Big Red's capacity was exceeded when lifting a G.E. traction motor using the attachment. Bridges was asked, "And, would you agree that BNSF and you as their corporate spokesman believe that the bracket caused or the attachment caused the overload[?]" BNSF objected, and the district court sustained the objection. This question launched subsequent offers of proof by Walker related to whether BNSF concluded and believed

that Big Red was over capacity when employees lifted G.E. traction motors with the forklifts with the BNSF attachments. BNSF objected to each offer of proof, and the court sustained the objections. Walker's offers of proof submitted after the ruling included the questions and answers from Bridges' deposition at which he had admitted the forklift as modified could cause an overload condition and risk of tipping.

*Rules of Evidence.*

At trial, BNSF made objections to Bridges' testimony based both on the rules related to hearsay and on the prohibition against introduction of subsequent remedial measures, the latter of which is contained in Neb. Rev. Stat. § 27-407 (Reissue 2016). Those rules are set forth below.

Hearsay is not admissible except as provided by the Nebraska Evidence Rules. *O'Brien v. Cessna Aircraft Co., supra*. See Neb. Rev. Stat. § 27-803 (Reissue 2016). Under Neb. Rev. Stat. § 27-801(4) (Reissue 2016), set forth in relevant part, a statement is not hearsay if "(b) The statement is offered against a party and is . . . (iv) a statement by his agent or servant within the scope of his agency or employment . . . ." Section 27-407 provides:

> When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment. Negligence or culpable conduct, as used in this rule, shall include, but not be limited to, the manufacture or sale of a defective product.

*Admissibility Arguments.*

On appeal, Walker contends that the evidence sought to be elicited from Bridges was not hearsay, because it represented

the understandings of BNSF, and that the district court erred when it excluded the evidence on the basis of hearsay. In response, BNSF asserts that Bridges' testimony was essentially a repeat of Taylor's declarations and that the district court properly excluded Bridges' statements because they are hearsay.

Walker further contends that the evidence sought to be elicited from Bridges reflected BNSF's postaccident investigation and was part of an investigation, and not a statement, concerning a subsequent remedial measure and that the district court erred when it excluded the evidence on this basis. In contrast, BNSF asserts that Bridges' testimony was properly excluded as evidence of subsequent remedial measures. See § 27-407.

*Error, If Any, Was Not*
*Unfairly Prejudicial.*

As explained below, we determine that even if the Bridges-related evidence was erroneously excluded, such error was not prejudicial. We determine that reversal is not required because the evidence which was excluded attempted to establish the same fact particularly regarding causation that Walker successfully presented to the jury by other means.

[5] As we recited above, the admission or exclusion of evidence at trial is not reversible error unless it unfairly prejudiced a substantial right of the complaining party. See *O'Brien v. Cessna Aircraft Co.*, 298 Neb. 109, 903 N.W.2d 432 (2017). We have stated that when the information is, for the most part, already in evidence from the testimony of witnesses, the exclusion of the evidence is not prejudicial. See *Steinhausen v. HomeServices of Neb.*, 289 Neb. 927, 857 N.W.2d 816 (2015).

At trial, Walker presented evidence that Big Red was over capacity and argued that the overloaded forklift represented negligence by BNSF and was the cause of her injuries. Danaher, Walker's expert certified professional engineer, opined that Big Red, outfitted with the attachment, was overloaded when carrying a G.E. motor regardless of its positioning. And Tester,

a safety trainer, also testified about the attachment to the forklift and concluded that "it was just inevitable an accident would happen." He opined that under the standards set forth by the American National Standards Institute, such an attachment "[s]houldn't have been used in the first place without expressed written approval by the manufacturer for them to do their testing on it to see if it was changing any of the stability of the forklift." He explained to the jury that if BNSF had gone through industry standard protocol for adding an attachment, the forklift operators would have been apprised of the forklift's new capacity through new tags and decals placed on the forklift. He testified that with respect to Big Red's load, its "maximum would not be 18,425 pounds, it would be a lot less."

However, in spite of Walker's success eliciting evidence concerning the hazard presented by Big Red's attachment, there was other evidence at trial to support the jury's verdict that Walker had not met her burden of proof. BNSF's case at trial was that Walker's operation of the forklift was dangerous and was the cause of its instability and the accident. Indeed, Walker's expert witness, Danaher, testified on cross-examination that based on his discussions with Walker, she had not followed the training she had received for depositing a load, and Skelton, who witnessed the accident, testified that Walker raised the load to an abnormal height and tilted the mast forward more than necessary to deposit the load. Further, BNSF introduced evidence of a commonly used "rule of thumb" metric under which, it argued, Big Red was not overloaded. Thus, there was ample evidence for the jury's consideration in support of both Walker's and BNSF's theories. Given the record, we conclude that the district court's exclusion of evidence did not prejudice a substantial right of Walker's.

## CONCLUSION

Although the district court excluded testimonial evidence of BNSF's designee related to the company's postaccident investigation, the exclusion did not unfairly prejudice a substantial

right of Walker, because she was able to present other evidence showing the same facts, and there was sufficient evidence to support the jury's verdict. We affirm the judgment of the district court.

Affirmed.

Miller-Lerman, J., concurring.

I concur with the court's determination that this case should be affirmed. My analysis differs because I would find that the exclusion of the Bridges-related testimony was erroneous, although I agree its exclusion was not prejudicial. As I explain below, I believe Bridges' testimony was not hearsay nor was it evidence of a subsequent remedial measure; hence, it should have been admitted. Further, I suggest this court adopt the distinction commonly made between postaccident investigations and subsequent remedial measures, the former of which are admissible under § 27-407.

HEARSAY

Contrary to BNSF's assertion, I agree with Walker that admissions by BNSF's corporate designee, Bridges, at trial and in his deposition, are not hearsay under § 27-801(4)(b)(iv). The admissions by a party to an action upon a material matter are admissible against him or her as original evidence. *Ficke v. Wolken*, 291 Neb. 482, 868 N.W.2d 305 (2015). Thus, as a general rule, any act or conduct on the part of a party which may fairly be interpreted as an admission against interest on a material issue may be shown in evidence against him or her. *Id*.

BNSF has attempted to characterize Bridges' testimony as merely conveying the conclusion of Big Red's manufacturers. However, the record shows that Bridges was asked about *his beliefs* and *BNSF's conclusions*. BNSF's representative was asked at trial if BNSF believed that the attachment caused an overload condition of the forklift and if he "agree[d] that every time an employee lifted a traction motor with that setup he or she was exceeding [the capacity]." Bridges' testimony that he,

on behalf of BNSF, believed that Big Red as modified exceeded capacity was an admission by a party regarding a material matter, which under § 27-801(4)(b)(iv) should not have been excluded as hearsay. Accordingly, I agree with Walker that the district court erred when it characterized Bridges' testimony as hearsay and excluded it on this basis.

## SUBSEQUENT REMEDIAL MEASURES

The rule pertaining to the exclusion of the subsequent remedial measures is codified in Nebraska in § 27-407. The rule as it relates to postevent investigations or reports has been much discussed in jurisprudence across the country. See, *Brazos River Authority v. GE Ionics, Inc.*, 469 F.3d 416 (5th Cir. 2006); *Complaint of Consolidation Coal Co.*, 123 F.3d 126 (3d Cir. 1997); *Prentiss & Carlisle v. Koehring-Waterous*, 972 F.2d 6 (1st Cir. 1992); *Specht v. Jensen*, 863 F.2d 700 (10th Cir. 1988); *Rocky Mountain Helicopters v. Bell Helicopters*, 805 F.2d 907 (10th Cir. 1986); *Maddox v. City of Los Angeles*, 792 F.2d 1408 (9th Cir. 1986); *Westmoreland v. CBS Inc.*, 601 F. Supp. 66 (S.D.N.Y. 1984); *Alimenta (U.S.A.), Inc. v. Stauffer*, 598 F. Supp. 934 (N.D. Ga. 1984); *Bullock v. BNSF Ry. Co.*, 306 Kan. 916, 399 P.3d 148 (2017); *Martel v. Mass. Bay Transp. Authority*, 403 Mass. 1, 525 N.E.2d 662 (1988).

The view I would find applicable and would adopt is that evidence of a postaccident investigation which is distinguishable from a remedial undertaking is not excluded by § 27-407. By its text, § 27-407 is explicitly limited to measures taken after an event "which, if taken previously, would have made the event less likely to occur." This does not mean that "competent evidence resulting from an internal investigation of a mishap must also be excluded." *Westmoreland*, 601 F. Supp. at 67. One treatise observes that "such reports or inspections are not *themselves* remedial measures, and do not themselves even reflect decisions to take or implement such measures." 2 Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence § 4:50 at 75 (4th ed. 2013).

It is well recognized that the policy of excluding subsequent remedial measures attempts to avoid discouraging steps to further safety. See, e.g., *Dusenbery v. United States*, 534 U.S. 161, 122 S. Ct. 694, 151 L. Ed. 2d 597 (2002); *Wollenhaupt v. Andersen Fire Equip. Co.*, 232 Neb. 275, 440 N.W.2d 447 (1989). However, "the policy considerations that underlie Rule 407, such as encouraging remedial measures, are not as vigorously implicated where investigative tests and reports are concerned." *Rocky Mountain Helicopters*, 805 F.2d at 918. Extending the rule to exclude evidence of *all* postaccident investigations "fails to credit the social value of making available for trial what is often the best source of information." *Westmoreland*, 601 F. Supp. at 67. The fruits of these investigative tests and reports are "one of the best and most accurate sources of evidence and information." *Id*. at 68. I agree with the observation that "[i]t would strain the spirit of the remedial measure prohibition in Rule 407 to extend its shield to evidence contained in post-event tests or reports." *Rocky Mountain Helicopters*, 805 F.2d at 918.

Walker's attempted examination of Bridges and her offers of proof at issue here did not touch on BNSF's decision to implement remedial measures after Walker's accident. Conclusions drawn by BNSF's agents regarding the forklift's capacity with the attachment were competent evidence resulting from an internal investigation of Walker's incident and were not, on their own, evidence of remedial measures taken to prevent future injuries. Accordingly, I agree with Walker that the district court erred when it characterized Walker's propounded evidence as subsequent remedial measures and excluded post-accident investigations, tests, and reports on this basis.

Although I believe the Bridges-related postaccident investigation evidence was wrongly excluded, viewing the record as a whole, I agree with this court's conclusion in this case that such exclusion was not prejudicial.