Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
01/29/2021 09:09 AM CST

- 716 -

Nebraska Supreme Court Advance Sheets
307 Nebraska Reports
DOUGLAS CTY. SCH. DIST. NO. 10 v. TRIBEDO, LLC
Cite as 307 Neb. 716

Douglas County School District No. 10, also known
as the Elkhorn School District, appellant,
v. Tribedo, LLC, a Nebraska limited
liability company, appellee.

___ N.W.2d ___

Filed November 6, 2020.    No. S-19-986.

1. **Trial: Evidence: Appeal and Error.** A trial court has the discretion to determine the relevancy and admissibility of evidence, and such determinations will not be disturbed on appeal unless they constitute an abuse of that discretion.

2. **Evidence: Appeal and Error.** In a civil case, the admission or exclusion of evidence is not reversible error unless it unfairly prejudiced a substantial right of the complaining party.

3. **Eminent Domain: Verdicts: Appeal and Error.** A condemnation action is reviewed as an action at law, in connection with which a verdict will not be disturbed unless it is clearly wrong.

4. **Jury Instructions: Proof: Appeal and Error.** To establish reversible error from a court's failure to give a requested jury instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction was warranted by the evidence, and (3) the appellant was prejudiced by the court's failure to give the requested instruction.

5. **Motions for New Trial: Appeal and Error.** An appellate court reviews a denial of a motion for new trial for an abuse of discretion.

6. **Constitutional Law: Eminent Domain: Damages: Words and Phrases.** The Nebraska Constitution provides that property shall not be taken or damaged for public use without just compensation, and the phrase "or damaged" provides that consequential damages may be an element of recovery in some situations.

7. **Eminent Domain: Damages.** The measure of damages for land taken for public use is the fair and reasonable market value of the land

- 717 -

Nebraska Supreme Court Advance Sheets
307 Nebraska Reports
DOUGLAS CTY. SCH. DIST. NO. 10 v. TRIBEDO, LLC
Cite as 307 Neb. 716

actually appropriated and the difference in the fair and reasonable market value of the remainder of the land before and after the taking.

8. ____: ____. Severance damages for land taken for public use are measured by all factors and inconveniences that would influence a purchaser.

9. **Jury Instructions: Appeal and Error.** If the jury instructions given, which are taken as a whole, correctly state the law, are not misleading, and adequately cover the issues submissible to a jury, there is no prejudicial error concerning the instructions and necessitating a reversal.

10. **Trial: Expert Witnesses.** Expert witness testimony is not binding on the triers of fact.

11. **Attorney Fees: Appeal and Error.** When an attorney fee is authorized, the amount of the fee is addressed to the trial court's discretion, and its ruling will not be disturbed on appeal absent an abuse of discretion.

12. **Attorney Fees.** An award of attorney fees involves consideration of such factors as the nature of the case, the services performed and results obtained, the length of time required for preparation and presentation of the case, the customary charges of the bar, and general equities of the case.

Appeal from the District Court for Douglas County: J Russell Derr, Judge. Affirmed.

Duncan A. Young, Jeff C. Miller, and Keith I. Kosaki, of Young & White Law Office, for appellant.

Adam W. Barney, Trenten P. Bausch, and Sydney M. Huss, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, and Freudenberg, JJ.

Miller-Lerman, J.
## I. NATURE OF CASE

To acquire property for a new high school site, Douglas County School District No. 10, also known as the Elkhorn School District (Elkhorn), condemned 43.36 acres of a 73.99-acre tract owned by Tribedo, LLC. The board of appraisers issued an award of $2,601,600 for the taking. Tribedo appealed the award to the district court for Douglas County

- 718 -

Nebraska Supreme Court Advance Sheets
307 Nebraska Reports
DOUGLAS CTY. SCH. DIST. NO. 10 v. TRIBEDO, LLC
Cite as 307 Neb. 716

and alleged that the award did not reflect the fair market value of the property taken and did not adequately compensate for damages to the remainder of Tribedo's property.

At trial, the parties offered evidence of the value of the taken property and the severance damages to the remainder property. Elkhorn unsuccessfully objected to Tribedo's presentation of evidence regarding the factors which went to the damages related to the change in fair market value of the remainder property. The jury returned a verdict finding compensation totaling $4,625,967. Elkhorn moved for a new trial, which was denied. The court granted Tribedo's posttrial motions for an award of interest and attorney fees. Elkhorn appeals, and it assigns several errors related to the compensation awarded Tribedo and the award of attorney fees to Tribedo. We affirm.

## II. STATEMENT OF FACTS

In April 2015, Tribedo executed a purchase agreement to acquire a 73.99-acre tract located on the northeast corner of West Maple Road and 180th Street in Douglas County, Nebraska (Property). The Property was zoned for agricultural use and was used as farmland. The managing agent of the partnership that owns Tribedo testified that Tribedo purchased the Property for $60,000 per acre with the intent to develop it into a mixed-use development. The sale closed on October 20, 2016.

The intersection of West Maple Road and 180th Street, where the Property is located, is designated as a "[C]ommunity 165" intersection on the city of Omaha's future land use map. A Community 165 designation refers to a large mixed-use development area of at least 165 acres, which includes big-box stores, grocery stores, office buildings, and other commercial development. There is evidence that it is the most intensive land use development that is allowed within the city of Omaha. Another such example is Village Pointe, located at 168th Street and West Dodge Road.

- 719 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
307 NEBRASKA REPORTS
DOUGLAS CTY. SCH. DIST. NO. 10 v. TRIBEDO, LLC
Cite as 307 Neb. 716

Tribedo planned to develop the Property with the use of a sanitary and improvement district. Pursuant to the purchase agreement for the Property, Tribedo began implementing land use planning and zoning processes to enable development of the land.

Subsequent to the execution of the purchase agreement, the 180th Street viaduct bridge, which connects Blondo Street to north of the Property, received federal funding and an environmental impact review. At the time of trial, Tribedo was acquiring right-of-way for the bridge project for construction to start in 2020, which it claims adds significant value to the Property. Tribedo had attempted to rezone the Property, which approval Tribedo believes it could have obtained, but once Elkhorn's condemnation occurred, the process was halted.

On February 22, 2017, 4 months after Tribedo closed on the land, Elkhorn condemned 43.36 acres of the Property for a new high school site. The board of appraisers appraised the 43.36-acre tract at $60,000 per acre, awarding Tribedo a total amount of $2,601,600 for the taking. Tribedo appealed to the district court, where it alleged that the award was inadequate and that the highest and best use of the Property was as a mixed-use commercial development.

### 1. TOTAL COMPENSATION: CONDEMNED PROPERTY PLUS DIMINISHED FAIR MARKET VALUE OF REMAINDER

As we explain in greater detail below, at trial, the experts addressed their opinions to both the 43.36 acres taken and the diminished fair market value of the 30.63-acre remainder, as well as a dollar value of total compensation incorporating both aspects of the award. Tribedo's first real estate appraiser, Kevin Kroeger, valued the total compensation at $5,890,000; Tribedo's second appraiser, Nicholas Dizona, valued the total compensation at $7,022,000; and Elkhorn's appraiser, Martin Giff, valued the total compensation at $2,601,600.

- 720 -

Nebraska Supreme Court Advance Sheets
307 Nebraska Reports
DOUGLAS CTY. SCH. DIST. NO. 10 v. TRIBEDO, LLC
Cite as 307 Neb. 716

## 2. Compensation for the 43.36 Acres
## of Condemned Property

Both parties presented evidence of the value of the condemned parcel. Kroeger valued the 73.99-acre Property at $98,010 per acre and the taken property at $4,249,720. Dizona valued the Property at $124,769 per acre and the taken property at $5,410,000. Giff valued the Property at $60,000 per acre, the same price it had sold for previously, and calculated the value of the taken property at $2,601,600.

## 3. Compensation for Severance Damages
## to the Remaining 30.63 Acres

At trial, Tribedo sought compensation for both the 43.36 acres taken and the reduction in fair market value to the remaining 30.63 acres. According to the evidence, after the condemnation, Tribedo's 30.63 acres remained in a Community 165 intersection and Tribedo's revised preliminary plat to develop that parcel into a mixed-use development had been approved at the time of trial.

Prior to trial, Elkhorn filed a motion in limine seeking to exclude testimony and evidence relating to Tribedo's "itemized" damages, based on the contention that they were not related to the reduction in fair market value to the remaining 30.63 acres. During trial, the district court overruled Elkhorn's evidentiary objections and motions to strike concerning the loss of market value of the remaining 30.63 acres.

Tribedo's first appraiser, Kroeger, testified that the highest and best use of the Property was "for a future mixed-use development, which would incorporate a combination of commercial, retail, office, and multi-family uses." He calculated severance damages to the 30.63 acres of $1,640,280, based on the impact of the project on the remainder and included grading costs. Kroeger explained that the topography of the site varied by 80 feet from very low-lying along the south side to significantly higher elevations on the north side. Potential wetlands had been identified on the low-lying south side.

- 721 -

Nebraska Supreme Court Advance Sheets
307 Nebraska Reports
DOUGLAS CTY. SCH. DIST. NO. 10 v. TRIBEDO, LLC
Cite as 307 Neb. 716

Kroeger noted that there would be additional expenses to implement a new development plan, due to the condemnation and losses to the condemnee incurred because of lag time caused by starting over with a new development model. Kroeger explained that Tribedo would now have overall fixed costs for any future mixed-use development spread over fewer acres. For example, a mixed-use development on the remainder property would likely lose 1.5 acres of developable land required to address wetlands mitigation required by the city of Omaha, which would previously have been spread out across the larger parcel.

The second appraiser, Dizona, opined that the 30.63 acres suffered diminution in the fair market value of approximately $1,500,000. On direct examination, Dizona testified that the highest and best use for the remaining 30.63 acres had changed from mixed-use "anchored development" to a development without an anchor tenant. According to Dizona, "the boulevard made it so that any potential anchored development would be impossible" because any improvements would have to face the boulevard, which could limit the useable space for Tribedo's new proposed development. He opined that a parcel the size of the Property would have attracted a higher dollar purchaser, because it could support a larger market participant like a grocery store, with mixed-use surrounding, and high-density residential to the north. He stated that comparable sales of sites 20 to 30 acres were more appropriate to determine the present value after the condemnation, because of the differences in functionality and usability as compared to a development of a larger area. Dizona incorporated an estimate of $937,000 associated with site elevation issues such as grading and dirt work in reaching his opinion.

Elkhorn's expert, Giff, valued the 30.63 acres at $69,000 per acre after the taking, and he concluded that the remainder property suffered no diminution in fair market value. He opined that the highest and best use of the condemned portion of the Property would have been as low-density residential

- 722 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
307 NEBRASKA REPORTS
DOUGLAS CTY. SCH. DIST. NO. 10 v. TRIBEDO, LLC
Cite as 307 Neb. 716

development and that the highest and best use of the remainder of the Property would be for commercial development. Giff testified that in reaching his valuation, he performed a comparable sales analysis on the remaining 30.63 acres by comparing the remainder with sales of three other properties situated nearby, all of which had at least a quarter mile of frontage on West Maple Road, including a sale on the southwest corner of the West Maple Road and 180th Street intersection. Giff attributed the higher price per acre he assigned to the remainder property to its proximity to the West Maple Road frontage road.

Other evidence at trial showed that Tribedo's preliminary plat to develop the remaining 30.63 acres included no imported dirt. However, the managing agent of Tribedo testified that importing dirt is a "cost benefit" for a developer that he needed to think through to evaluate the rewards compared to the risks of developing the site.

### 4. Jury Instructions

At the jury instruction conference, Elkhorn proffered the following jury instruction regarding Tribedo's severance damages:

> To determine the fair market value of the property taken in this case and to determine if there is a reduction in the fair market value of the property that was not acquired, you may consider everything which affects the market value of the subject property.
>
> You have heard some testimony about [sic] from the witnesses regarding the "costs to cure," and like matters. You may only consider such "costs to cure" if they have an impact on the diminution of the fair market value of the remaining [30.63] acres as a result of the condemnation.

The district court refused this jury instruction, and instead instructed the jury, inter alia, that "Tribedo is entitled to recover the fair market value of the 43.36 acres taken by Elkhorn, and the diminished value, if any, of the remaining 30.63 acres

- 723 -

Nebraska Supreme Court Advance Sheets
307 Nebraska Reports
DOUGLAS CTY. SCH. DIST. NO. 10 v. TRIBEDO, LLC
Cite as 307 Neb. 716

owned by Tribedo, figuring the value as of February 22, 2017." Instruction No. 4 defined "fair market value" as follows:

The "fair market value" of a piece of property is the price that someone ready to sell, but not required to do so, would be willing to accept in payment for the property, and that someone ready to buy, but not required to do so, would be willing to pay for the property.

In determining fair market value, you may consider the uses to which the property has been put and the uses to which it might reasonably be put in the immediate future.

### 5. Jury Verdict and Posttrial Pproceedings

The jury found that Elkhorn owed compensation to Tribedo totaling $4,625,967, broken down as follows: $3,295,967 "[f]or the 43.36 acres owned by Tribedo taken by Elkhorn" and $1,330,000 "[f]or the decrease in value, if any, of Tribedo's remaining 30.63 acres."

After the conclusion of the jury trial and after the jury returned its verdict, the district court issued an order setting forth its rationale for denying Elkhorn's motions and objections concerning the testimony and evidence of the severance damages. The May 24, 2019, order stated, inter alia, that the $937,000 to import dirt was not an impermissible "consequential cost" to the taking, but was "part of the diminished value of the remaining property," because imported dirt was needed to level the remaining property, and that without imported fill, the property would be worth less than if it had been level.

Elkhorn moved for judgment notwithstanding the verdict and for a new trial, and Tribedo moved for attorney fees, expert witness fees, and costs. Hearing was held on June 14, 2019. Elkhorn argued that the verdict was not supported by the evidence with respect to severance damages, because there was no evidence to support an amount of $1,330,000 for the diminished fair market value of the remainder property. The district court ultimately denied Elkhorn's motions.

- 724 -

Nebraska Supreme Court Advance Sheets
307 Nebraska Reports
DOUGLAS CTY. SCH. DIST. NO. 10 v. TRIBEDO, LLC
Cite as 307 Neb. 716

With respect to Tribedo's request for attorney fees, expert witness fees, and interest, Tribedo submitted affidavits of three attorneys who had reviewed Tribedo's billing records and opined that the amount of fees requested was reasonable. Elkhorn objected to the affidavits, because they did not include actual billings and Elkhorn could not verify that the work was applicable and that the fees were not duplicative. The district court overruled Elkhorn's objections to the attorney fees affidavits. The district court rejected Elkhorn's opposition to the attorney fees request and stated that under the circumstances, it could determine the reasonableness of an attorney fees request even in the absence of a detailed billing record.

On September 16, 2019, the district court entered judgment for Tribedo for $4,625,967 on the jury's verdict; $143,681.89 in prejudgment interest; postjudgment interest at $295.58 per day or as permitted by law; and $590,924.89 in attorney fees. In a written order, the district court found that the requested attorney fees were reasonable, given the complexity and duration of the litigation; the number of issues litigated; the result of a judgment exceeding the award by the board of appraisers by over 75 percent; and the size of the judgment, which it believed to be one of the largest jury awards in a condemnation matter on record.

Elkhorn appeals.

## III. ASSIGNMENTS OF ERROR

Elkhorn first assigns various errors related to the loss in value of Tribedo's remainder property. Summarized and restated, these claims are that the district court erred (1) when it denied Elkhorn's motions to strike appraisal evidence offered by Tribedo; (2) when it instructed the jury regarding severance damages; (3) when it accepted the jury's award of damages, which Elkhorn claims was excessive; and (4) when it denied Elkhorn's motion for a new trial.

Elkhorn further claims that the district court erred when it awarded attorney fees, expert fees, and interest to Tribedo.

- 725 -

Nebraska Supreme Court Advance Sheets
307 Nebraska Reports
DOUGLAS CTY. SCH. DIST. NO. 10 v. TRIBEDO, LLC
Cite as 307 Neb. 716

## IV. STANDARDS OF REVIEW

[1] A trial court has the discretion to determine the relevancy and admissibility of evidence, and such determinations will not be disturbed on appeal unless they constitute an abuse of that discretion. *Walker v. BNSF Railway Co.*, 306 Neb. 559, 946 N.W.2d 656 (2020).

[2] In a civil case, the admission or exclusion of evidence is not reversible error unless it unfairly prejudiced a substantial right of the complaining party. *Id*.

[3] A condemnation action is reviewed as an action at law, in connection with which a verdict will not be disturbed unless it is clearly wrong. *Curry v. Lewis & Clark NRD*, 267 Neb. 857, 678 N.W.2d 95 (2004).

[4] To establish reversible error from a court's failure to give a requested jury instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction was warranted by the evidence, and (3) the appellant was prejudiced by the court's failure to give the requested instruction. *Hike v. State*, 288 Neb. 60, 846 N.W.2d 205 (2014).

[5] An appellate court reviews a denial of a motion for new trial for an abuse of discretion. *Anderson v. Babbe*, 304 Neb. 186, 933 N.W.2d 813 (2019).

## V. ANALYSIS

### 1. Damage to Remainder Property and Law on Severance Damages

Elkhorn claims generally that the district court improperly allowed Tribedo's expert appraisers to itemize damages to the remainder property. Specifically, it claims that reversible error occurred when the district court admitted evidence of Tribedo's increased costs, when it instructed the jury regarding severance damages, when it accepted the jury's award of damages, and when it denied Elkhorn's motion for a new trial. We consider each claim in turn below.

- 726 -

Nebraska Supreme Court Advance Sheets
307 Nebraska Reports
DOUGLAS CTY. SCH. DIST. NO. 10 v. TRIBEDO, LLC
Cite as 307 Neb. 716

[6] Several principles of law govern damages to the remainder property in this case. The Nebraska Constitution provides that property shall not be taken or damaged for public use without just compensation, and the phrase "or damaged" provides that consequential damages may be an element of recovery in some situations. See *Patrick v. City of Bellevue*, 164 Neb. 196, 82 N.W.2d 274 (1957). See, also, NJI2d Civ. 13.01, comment & authorities, § X(G) (discussing just compensation as it relates to consequential damages).

[7,8] The measure of damages for land taken for public use is the fair and reasonable market value of the land actually appropriated and the difference in the fair and reasonable market value of the remainder of the land before and after the taking. *Armbruster v. Stanton-Pilger Drainage Dist.*, 169 Neb. 594, 100 N.W.2d 781 (1960). Severance damages for land taken for public use are measured by all factors and inconveniences that would influence a purchaser. See, *Sorenson v. Lower Niobrara Nat. Resources Dist.*, 221 Neb. 180, 376 N.W.2d 539 (1985) (superseded by statute on other grounds); *State v. Dillon*, 175 Neb. 444, 122 N.W.2d 223 (1963). A jury may take into account "'every (nonspeculative) element of annoyance and disadvantage resulting from the improvement which would influence an intending purchaser's estimate of the market value of such property.'" *Armbruster v. Stanton-Pilger Drainage Dist.*, 169 Neb. at 610, 100 N.W.2d at 792. For example, "'[t]he burden of additional fencing, and like matters, are to be included, not by being added together item by item, but to the extent that, taken as a whole, they detract from the market value of the property.'" *Id*. at 609, 100 N.W.2d at 791. Other such elements which could influence market value include

> expenses for additional fencing, repairs, removal, and rebuilding thereof; the expenses of removal and repair of plaintiffs' private roads and bridge, together with inconvenience and disadvantage caused thereby; the expenses of repair and the threatened peril and damages to one

- 727 -

Nebraska Supreme Court Advance Sheets
307 Nebraska Reports
DOUGLAS CTY. SCH. DIST. NO. 10 v. TRIBEDO, LLC
Cite as 307 Neb. 716

of plaintiffs' two valuable irrigation wells, irrigation and sewer systems, and to their buildings; and the expenses incurred attempting, in good faith, to stop the erosion and damages when defendant refused to do so, and like matters . . . .

*Id*. at 610, 100 N.W.2d at 792. Ultimately, evidence of itemized damages may be considered only if such damages diminish the market value of the property. See *Armbruster v. Stanton-Pilger Drainage Dist., supra*.

## 2. Elkhorn's Claims

### (a) Motion to Strike and Objections to Tribedo's Appraisers' Testimony

Elkhorn argues that the district court abused its discretion when it allowed Tribedo's expert appraisers to testify about damages to the remainder over Elkhorn's objections. As stated previously, a trial court's decision to admit or exclude evidence is reviewed for abuse of discretion. *Walker v. BNSF Railway Co.*, 306 Neb. 559, 946 N.W.2d 656 (2020). In a civil case, the admission or exclusion of evidence is not reversible error unless it unfairly prejudiced a substantial right of the complaining party. *Id*.

Elkhorn specifically objects to evidence by Kroeger, who testified to a number of factors that diminished the value of the remainder for the property owner. Kroeger first testified that he believed the value of the property taken was $4,249,720. Kroeger later opined that the total amount of compensation due for the taking, composed of property taken and diminution of fair market value of the remainder, was $5,890,000.

Regarding the remainder, Kroeger presented evidence of the costs of several restoration items, such as grading and additional wetland rehabilitation that he stated were necessary as a result of dividing the Property. Kroeger testified that compensation was payable to the property owner based on a change in the fair market value of the remainder.

- 728 -

Nebraska Supreme Court Advance Sheets
307 Nebraska Reports
DOUGLAS CTY. SCH. DIST. NO. 10 v. TRIBEDO, LLC
Cite as 307 Neb. 716

Elkhorn also argues that Dizona's testimony should not have been admitted, because Dizona utilized a summation approach by tacking on itemized damages to determine the reduction in fair market value. To illustrate, Elkhorn notes that Dizona referred to elements influencing value, including dirt fill and leveling costs, a decrease in usable space, and changes in highest and best use. The question is whether Dizona's "itemized" costs were improperly considered as add-ons to the market value or whether they were properly considered as factors influencing his opinion of the fair market value of the remainder property. We find the factors to which Tribedo's experts referred were properly considered in reaching their opinions regarding the fair market value of the remainder.

Consistent with the district court ruling, Kroeger and Dizona detailed numerous elements that influenced their valuations, and both appraisers testified that their references to damages related to a reduction in fair market value. Items such as grading and importing dirt may properly be considered to the extent they affected the fair market value of the remaining property. To the extent that Elkhorn notes conflicting testimony by Tribedo's experts, or doubts the propriety of elements considered in the valuation, such conflicting testimony is a question of fact. See *Chadron Energy Corp. v. First Nat. Bank*, 236 Neb. 173, 459 N.W.2d 718 (1990). The district court did not abuse its discretion when it admitted expert testimony regarding the diminution of market value to Tribedo's remaining property.

### (b) Jury Instruction

Elkhorn next contends that the district court erred when it refused to give its proposed jury instruction relating to the remainder which stated that the "'costs to cure'" could be considered only if they have an impact on the fair market value of the remaining property.

[9] As set forth above, a court's failure to give a requested jury instruction is not reversible error unless an appellant shows that (1) the tendered instruction is a correct statement

- 729 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
307 NEBRASKA REPORTS
DOUGLAS CTY. SCH. DIST. NO. 10 v. TRIBEDO, LLC
Cite as 307 Neb. 716

of the law, (2) the tendered instruction was warranted by the evidence, and (3) the appellant was prejudiced by the court's failure to give the requested instruction. *Hike v. State*, 288 Neb. 60, 846 N.W.2d 205 (2014). However, if the instructions given, which are taken as a whole, correctly state the law, are not misleading, and adequately cover the issues submissible to a jury, there is no prejudicial error concerning the instructions and necessitating a reversal. See *id*.

Although the requested instructions are a correct statement of the law, Elkhorn was not prejudiced by the district court's refusal to give them. The instruction actually given on this question stated that "Tribedo is entitled to recover the fair market value of the 43.36 acres taken by Elkhorn, and the diminished value, if any, of the remaining 30.63 acres owned by Tribedo, figuring the value as of February 22, 2017." Instruction No. 4 defined "fair market value" as follows:

> The "fair market value" of a piece of property is the price that someone ready to sell, but not required to do so, would be willing to accept in payment for the property, and that someone ready to buy, but not required to do so, would be willing to pay for the property.
>
> In determining fair market value, you may consider the uses to which the property has been put and the uses to which it might reasonably be put in the immediate future.

Instruction No. 5 stated, "The Nebraska and United States Constitutions provide that the property of no person shall be taken for public use without just compensation therefore." "'Just Compensation,'" as defined in instruction No. 5, is "the fair market value of the property at the time it was taken and the diminished value, if any, of the remainder as a result of the taking which occurred on February 22, 2017."

The substance of the proposed instruction was consistent with the instructions given by the district court. Because the jury was adequately instructed on the measure of damages to the remaining property, this assignment of error is without merit.

- 730 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
307 NEBRASKA REPORTS
DOUGLAS CTY. SCH. DIST. NO. 10 v. TRIBEDO, LLC
Cite as 307 Neb. 716

### (c) Amount of Damages

Elkhorn next argues that the district court erred when it accepted the jury verdict with respect to damages to the remaining property. The crux of Elkhorn's argument is that the jury awarded severance damages which, Elkhorn argues, were not specifically supported by the opinion of any expert.

The amount of damages sustained in a condemnation action is peculiarly a question of a local nature and ordinarily is to be determined by a jury. *Patterson v. City of Lincoln*, 250 Neb. 382, 550 N.W.2d 650 (1996). Where the evidence is conflicting, an appellate court will not ordinarily interfere with the verdict of the jury unless it is clearly wrong. *Id*.

[10] Here, the jury's total award of $4,625,967, as compensation for both the taken property and diminution to the fair market value of the remainder, was supported by sufficient evidence. Kroeger valued the total compensation at $5,890,000; Dizona valued the total damages at $7,022,000; and Giff valued the total damages at $2,601,600. Expert witness testimony is not binding on the triers of fact. *Id*. In condemnation cases, we generally do not set aside a jury award which has fallen within the range of conflicting sets of testimony. See *In re Petition of Omaha Pub. Power Dist.*, 268 Neb. 43, 680 N.W.2d 128 (2004). The jury award of $4,625,967 in total compensation was supported by sufficient competent evidence. We will not speculate as to how the jury reached the amount of its award. This assignment of error is without merit.

### (d) Motion for New Trial

Elkhorn's claim arising out of the denial of its motion for new trial is generally grounded in the question of whether Kroeger and Dizona testified to an improper measure of damages, particularly with respect to the remainder property. Because we have found the district court did not err when it admitted such testimony, it likewise did not abuse its discretion when it denied the motion for a new trial.

- 731 -

Nebraska Supreme Court Advance Sheets
307 Nebraska Reports
DOUGLAS CTY. SCH. DIST. NO. 10 v. TRIBEDO, LLC
Cite as 307 Neb. 716

### 3. Attorney Fees

There is no dispute in this case that Tribedo had a right to an award of attorney fees. See Neb. Rev. Stat. § 76-720 (Reissue 2018). Elkhorn claims that the amount of the fees was unreasonable. We recognize that the attorney fees are substantial, but we find no abuse of discretion.

[11,12] When an attorney fee is authorized, the amount of the fee is addressed to the trial court's discretion, and its ruling will not be disturbed on appeal absent an abuse of discretion. *ACI Worldwide Corp. v. Baldwin Hackett & Meeks*, 296 Neb. 818, 896 N.W.2d 156 (2017). An award of attorney fees involves consideration of such factors as the nature of the case, the services performed and results obtained, the length of time required for preparation and presentation of the case, the customary charges of the bar, and general equities of the case. *Id*.

In support of its fee application, Tribedo offered affidavits of three members of the Nebraska bar, who testified that they had reviewed the fees charged by Tribedo's attorneys, received a detailed summary of the work provided by counsel, and stated that they found the requested fees reasonable. Following submission of evidence and briefing, the district court found:

> The amount sought by Tribedo is extremely reasonable, particularly given the fact that the judgment exceeded the award by more than 75%, the judgment is believed to be one of the largest jury awards in a condemnation matter to be found in a reported court decision in this State, the litigation was fairly complex and, thus far, has persisted over a nearly 2 ½ year period, complex appraisals had to be prepared by highly trained and experienced appraisers, the experience and professional training of Tribedo's attorneys, the customary charges of the bar and the general equities of the case.

After reviewing the district court's detailed explanation for its award of attorney fees, we agree that the above factors

- 732 -

Nebraska Supreme Court Advance Sheets
307 Nebraska Reports
DOUGLAS CTY. SCH. DIST. NO. 10 v. TRIBEDO, LLC
Cite as 307 Neb. 716

support the attorney fees awarded. The district court did not abuse its discretion when it awarded Tribedo $590,924.89 in attorney fees.

## VI. CONCLUSION

For the reasons set forth above, we conclude that the district court did not err in its trial rulings nor in accepting the jury verdict for total compensation due Tribedo of $4,625,967. Further, the district court did not abuse its discretion when it awarded Tribedo $590,924.89 in attorney fees. All assignments of error have been considered and are without merit. Accordingly, we affirm the judgment of the district court.

AFFIRMED.

Papik, J., not participating.