IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

HOHENSTEIN V. HOHENSTEIN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

DOUGLAS W. HOHENSTEIN ET AL., INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF
COTTONWOOD FLATS, INC., A NEBRASKA CORPORATION, APPELLEES,

v.

LILLIAN HOHENSTEIN, INDIVIDUALLY AND AS TRUSTEE OF THE WILLIAM AND LILLIAN
HOHENSTEIN TRUST AND FAMILY TRUST, AND AS DIRECTOR AND OFFICER OF COTTONWOOD
FLATS, INC., AND KURT HOHENSTEIN, INDIVIDUALLY AND AS DIRECTOR AND OFFICER OF
COTTONWOOD FLATS, INC., APPELLANT.

Filed October 29, 2024.    No. A-23-1057.

Appeal from the District Court for Dakota County: BRYAN C. MEISMER, Judge. Affirmed
in part, and in part vacated and remanded with directions.

Kurt A. Hohenstein, pro se.

Andrew T. Schlosser and Susan J. Spahn, of Fitzgerald, Schorr, Barmettler & Brennan,
P.C., L.L.O., for appellees.

RIEDMANN, Chief Judge, and MOORE and BISHOP, Judges.

MOORE, Judge.

INTRODUCTION

Kurt Hohenstein, self-represented, appeals from the December 4, 2023, order of the district
court for Dakota County, entered after remand from this court relating to the award of attorney
fees in the underlying litigation. Kurt assigns errors challenging the district court's compliance
with this court's mandate and raising certain issues which were addressed in this court's previous
memorandum opinion in *Hohenstein v. Hohenstein*, No. A-22-108, 2023 WL 5217713 (Neb. App.

- 1 -

Aug. 15, 2023) (selected for posting to court website). For the reasons set forth herein, we affirm in part, and in part vacate and remand with directions.

## STATEMENT OF FACTS

The detailed facts and complex procedural history of this case are laid out in our previous memorandum opinion, and we do not repeat those details here, except as necessary to an understanding of the present appeal. See *id*. The original complaint in this case was filed in 2013 and involved claims arising out of a dispute among Kurt and some of his siblings with respect to various agreements and interests in the family farm, which had previously been incorporated by their parents as Cottonwood Flats, Inc. The three siblings who filed suit in 2013 (the plaintiffs) were each shareholders in Cottonwood Flats, as was Kurt, who is a defendant in the litigation. Kurt's mother, in various capacities, was also named as a defendant; she died before trial, and the case against her was revived against Kurt as special administrator of her estate. Two of the plaintiffs died before entry of the final order at issue in the previous appeal; the case was revived in the names of their surviving spouses as personal representatives. The plaintiffs filed an amended complaint in 2014, both individually, and derivatively on behalf of Cottonwood Flats. The claims asserted by the parties fall broadly into two categories, those relating to the shareholder derivative action and those relating to the administration of certain trusts.

Trial was held in April 2017, and the judge who presided over trial subsequently entered an order in February 2019 ruling on the issues presented at trial. The district court found generally in favor of the plaintiffs, and it ordered the payment of the plaintiffs' reasonable attorney fees and costs incurred in prosecuting the action, entering judgment, jointly and severally, against Kurt personally and as special administrator of his mother's estate. The court ordered payment of attorney fees under both Neb. Rev. Stat. § 30-3893 (Reissue 2016) (award of attorney fees in proceedings involving administration of trust) and Neb. Rev. Stat. § 21-2076 (Reissue 2012) (statute concerning award of attorney fees in derivative actions in effect at time of plaintiff's operative complaint). In connection with the award of attorney fees under § 21-2076, the court found that the proceeding had resulted in a substantial benefit to Cottonwood Flats. See § 21-2076(1). The court did not make specific findings under § 21-2076(3). The February 2019 order left certain matters open for resolution through post-trial proceedings, including a determination of the amount of attorney fees to be awarded. In May 2019, the original trial judge granted a motion to alter or amend filed by the plaintiffs. The original trial judge retired at the end of May 2019 and an interim judge presided over post-trial proceedings until the successor judge was appointed in December 2019. The successor judge has presided over subsequent proceedings.

Following a post-trial evidentiary hearing to determine the amount of the plaintiffs' attorney fees, the district court entered an order in May 2020, awarding attorney fees and costs to the plaintiffs totaling $413,059.04. The award of attorney fees and costs was not split between the plaintiffs' various claims.

Following further post-trial proceedings, the district court entered a final order in January 2022, incorporating the findings, conclusions, and awards set forth in the February 2019 order following trial, the May 2019 order granting the plaintiffs' motion to alter or amend, and the May 2020 order on attorney fees. Kurt perfected his appeal to this court after the district court's denial of his motion for new trial. We note that two previous appeals filed by Kurt were dismissed by this

court for lack of jurisdiction (prior to entry of the January 2022 order, the court had not disposed of all the claims of all the parties as required by Neb. Rev. Stat. § 25-1315(1) (Reissue 2016)).

On appeal from the January 2022 final order and the denial of his motion for new trial, Kurt asserted numerous errors, including error in the district court's award of attorney fees. Kurt did not challenge the attorney fee award pursuant to § 30-3893. However, he did assign that the court erred in awarding attorney fees in the derivative action under § 21-2076 against an individual director rather than Cottonwood Flats. In addressing Kurt's assigned error with respect to attorney fees, we examined the language of § 21-2076, which provided:

On termination of the derivative proceeding the court may:

(1) Order the corporation to pay the plaintiff's reasonable expenses, including attorney's fees, incurred in the proceeding if the court finds that the proceeding has resulted in a substantial benefit to the corporation.

. . . .

(3) Order a party to pay an opposing party's reasonable expenses, including attorney's fees, incurred because of the filing of a pleading, motion, or other paper, if the court finds that the pleading, motion, or other paper was not well grounded in fact, after reasonable inquiry, or warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law and was interposed for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

See, also, Neb. Rev. Stat. § 21-281 (Reissue 2022) (current statutory provision concerning award of attorney fees in derivative actions with substantially similar language).

We agreed with Kurt's assertion on appeal that § 21-2076(1) did not authorize a court to order payment of fees by Kurt individually. We rejected the plaintiffs' argument that the district court's findings about Kurt's credibility at trial could be used to support an award under subsection (3). We noted that a review of the evidence admitted at the post-trial hearing on attorney fees showed that the amount of fees requested by the plaintiffs was for work performed by their attorneys on the case as a whole and not just on portions of the case relating to trust administration matters, and we found as follows:

While the district court did not abuse its discretion in awarding attorney fees under § 30-389[3], the amount of attorney fees awarded was clearly for work above and beyond that attributable to just the trust matters. The court did abuse its discretion in awarding attorney fees against Kurt pursuant to § 21-2076(1), which does not allow for an award of attorney fees against an individual. We remand for the court to make the appropriate findings, based on the evidence submitted in the post-trial attorney fee hearing, under either § 21-2076(1) or (3), if the court determines that an award is proper under one of those subsections. If the evidence does not support an award under any subsection of § 21-2076, the court may take additional evidence only for the purpose of determining how much of the claimed attorney fees represented by the exhibits admitted in the previous attorney fee hearing are attributable to the trust administration claims.

*Hohenstein v. Hohenstein*, No. A-22-108, 2023 WL 5217713 at \*21 (Neb. App. Aug. 15, 2023) (selected for posting to court website). This court affirmed the orders of the district court in all

- 3 -

other respects. We discuss other issues addressed in our previous memorandum opinion as they relate to the present appeal in the analysis section below.

Upon remand, the district court entered an order on October 27, 2023, addressing the directions from this court (the October 2023 order on remand). In doing so, the successor judge expressed hesitancy "to draw conclusions after the fact based on the written record," given that he was not the original trial judge, and stated that he had "looked to the prior judges' [o]rders for guidance." The successor judge noted that in the February 2019 order following trial, the original trial judge made findings pursuant to § 21-2076(1), but since the original trial judge did not make any findings under § 21-2076(3), the successor judge was "hesitant" to make any such findings. Accordingly, the court amended the February 2019 order following trial and the May 2020 order on attorney fees to find, pursuant to § 21-2076(1), that Cottonwood Flats received a substantial benefit from these proceedings and that reasonable attorney fees should be awarded. Based on the exhibits and testimony received at the post-trial attorney fee hearing, the court granted the plaintiffs judgment for attorney fees and costs totaling $413,059.04 to be paid by Cottonwood Flats, as allowed by § 21-2076(1).

On November 6, 2023, the plaintiffs filed a motion to alter or amend. They noted that the district court's October 2023 order on remand did not address attorney fees related to the trust portions of the case. They expressed the position that in remanding to the district court, this court contemplated a "two-prong determination" by the district court: first, determining whether Kurt was liable for payment of fees pursuant to § 21-2076(3), and second, if Kurt was not liable under § 21-2076(3), how much of the fee award should be allocated to the trust portion of the case and paid by Kurt and how much should be allocated to the corporate portion of the case and paid by Cottonwood Flats. As to the allocation of fees between the trust and corporate matters, the plaintiffs stated that those issues were "inextricably intertwined" and that Kurt's actions "would not have been possible without involvement of both the trust and the corporation." They asserted that it would "be impossible to place each individual time entry [in the attorney fee affidavits] into the corporate or trust category" and asserted that the most reasonable and equitable allocation would be to divide the attorney fee award equally between the trust and corporate issues. They asked the court to alter or amend the October 2023 order on remand to award them attorney fees in the total amount of $413,059.04, with $206,529.52 to be paid by Cottonwood Flats pursuant to § 21-2076(1) and $206,529.52 to be paid jointly and severally by Kurt individually and as special administrator of his mother's estate pursuant to § 30-3893.

At the November 9, 2023, hearing on their motion to alter or amend, the plaintiffs argued that in remanding, this court had contemplated the district court making some allocation of the attorney fees between the trust and corporate sides of the case, as well as determining whether Kurt or Cottonwood Flats was responsible for paying the fees allocated to the corporate side of the case. The plaintiffs' attorney claimed that the corporate and trust issues were "so intertwined" that there was "no way to separate them out" and determine a percent of fees attributable to work on each side of the case, noting that "[t]he time entries just were not kept that way because that wasn't the reality of the situation." The plaintiffs again proposed a 50/50 split of the fees between trust and corporate matters as being the most reasonable, fair, and just "under the current situation."

In response, Kurt expressed concern about "a judgment for $400,000 [sic] entered against a nonparty [Cottonwood Flats]," but he argued that plaintiffs' proposal of splitting the attorney fee

award equally between the trust and corporate portions of the case would not be consistent with the mandate from this court. He stated that if an allocation had to be made, the attorney fee affidavits submitted at the post-trial attorney fee hearing would provide a basis "to go back and make some determination of what was allocated to the [corporate] derivative claim and what was allocated to the trust claim." He noted statements in the attorney fee affidavits that the plaintiffs' attorneys had generally split work based upon expertise with one attorney having done most of the trust work and another attorney doing most of the corporate work. The plaintiffs' attorney arguing the motion confirmed that the plaintiffs' attorneys had generally delineated work in the case as represented in the affidavits but noted that a strict delineation of work between trust and corporate matters had not always been possible.

On December 4, 2023, the district court entered an order ruling on the plaintiffs' motion to alter or amend (the December 2023 order). The court reviewed the relevant prior orders, as well as the directions from this court and the plaintiffs' arguments in their motion to alter or amend, and it agreed that it should have made findings regarding attorney fees pursuant to both § 30-3893 and § 21-2076(1). The court then noted the arguments made by the parties at the November 2023 hearing on the plaintiffs' motion to alter or amend, and it stated:

> While the Court is inclined to agree that it would be inappropriate to attempt to divide this fee award forensically, the Court would rather not make an arbitrary division of the fee if there were a division that might be more accurate and somewhat based on reality. Both parties agree that, generally speaking, [Attorney A] worked the Trust issue in this case, while [Attorney B] worked the corporate issue. In reviewing Exhibit Nos. 1000 and 1001, the bills submitted offer a breakdown both by individual entry, but also by attorney. It was a relatively straight forward process to determine [Attorney A's] time spent on this matter, and, as the parties agree that [Attorney A] generally worked the Trust issue, this portion of the fee will be awarded pursuant to §[ ]30-389[3], the rest and remainder to be awarded pursuant to §[ ]21-2076(1). As stated, this is certainly not a perfect division of the fee award, but it does have some basis in fact and is certainly more appropriate than entering an award 100% under one statute or the other or arbitrarily cutting it in half.

> Reviewing Exhibit No. 1000, the Court was able to determine that $22,521.00 of the total $279,549.72 was attributable to work performed by [Attorney A]. Exhibit No. 1001 was all attributable to [Attorney A], therefore a total of $143,525.42 ($22,521.00 + $121,004.42) is awarded per . . . §[ ]30-389[3]. The remainder of $269,533.62 ($413,059.04[ ]-[ ]143,525.42) is awarded per . . . §[ ]20-2076(1).

The court amended the May 2020 order on attorney fees and the October 2023 order accordingly. Based on the evidence provided at the post-trial attorney fee hearing, the court granted the plaintiffs judgment for attorney fees totaling $413,059.04. Pursuant to § 30-3893, the court found that justice and equity required that "Kurt Hohenstein, Individually," be ordered to pay $143,525.42 of the plaintiffs' attorney fees incurred in prosecution of this action. Pursuant to § 21-2076(1), the court found that Cottonwood Flats received a substantial benefit from these proceedings, that reasonable attorney fees should be awarded, and that $269,533.62 of the attorney fees awarded should be paid by Cottonwood Flats as allowed in that section.

Kurt subsequently perfected the present appeal to this court.

ASSIGNMENTS OF ERROR

Kurt's brief on appeal contains five assigned errors. Some of his assigned errors are somewhat convoluted and difficult to follow, but in the first three assigned errors, he generally challenges the December 2023 order and asserts that the order did not comply in various regards with this court's mandate following the previous appeal. In his fourth and fifth assigned errors, Kurt raises issues that were addressed in the previous appeal with respect to Cottonwood Flats' status in the case.

STANDARD OF REVIEW

The construction of a mandate issued by an appellate court presents a question of law on which an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *Darling Ingredients v. City of Bellevue*, 313 Neb. 853, 986 N.W.2d 757 (2023).

When an attorney fee is authorized, the amount of the fee is addressed to the discretion of the trial court, whose ruling will not be disturbed on appeal in the absence of an abuse of discretion. *McGill Restoration v. Lion Place Condo. Assn.*, 309 Neb. 202, 959 N.W.2d 251 (2021).

The question of jurisdiction is a question of law, upon which an appellate court reaches a conclusion independent of the trial court. *In re Estate of Koetter*, 312 Neb. 549, 980 N.W.2d 376 (2022).

ANALYSIS

*Status of Cottonwood Flats.*

We first address Kurt's fourth and fifth assignments of error which concern issues he raised in the previous appeal, primarily, Kurt's assertion that as the real party in interest, Cottonwood Flats was an indispensable party to the derivative action, and that the plaintiffs' failure to bring Cottonwood Flats into the case as a party by service of process deprived the district court, as well as this court, of subject matter jurisdiction over the derivative action.

In the present appeal, Kurt raises the issue of the district court's (and this court's) subject matter jurisdiction specifically in the context of the district court's December 2023 order directing Cottonwood Flats to pay $269,533.62 of the attorney fees and expenses awarded to the plaintiffs in this case. Kurt generally argues that since Cottonwood Flats was never made a party to the case, the court did not have jurisdiction to order Cottonwood Flats to pay the portion of the plaintiffs' attorney fees allocated to the corporate side of the case.

The plaintiffs argue that the question of whether Cottonwood Flats was an indispensable party to the derivative proceedings has already been litigated and that our previous determination is now the law-of-the-case. The law-of-the-case doctrine reflects the principle that an issue litigated and decided in one stage of a case should not be relitigated at a later stage. *In re Estate of Adelung*, 312 Neb. 647, 980 N.W.2d 415 (2022).

In our previous memorandum opinion, we rejected Kurt's argument that the plaintiffs were required to join Cottonwood Flats as a party in the derivative action. We recognized that the plaintiffs, who are shareholders, exercised their right to commence a derivative proceeding under Neb. Rev. Stat. § 21-276 (Reissue 2022) and to bring suit on behalf of Cottonwood Flats in their

representative capacity for the corporation. See *Trieweiler v. Sears*, 268 Neb. 952, 689 N.W.2d 807 (2004) (stockholder's derivative suit is one by corporation conducted by stockholder as its representative). Further, our directions on remand contemplated the potential award of attorney fees against Cottonwood Flats should the district court determine that fees were proper under § 21-2076(1).

Kurt's arguments in the present appeal are essentially an effort to relitigate the issue of whether Cottonwood Flats should have been included as a party in this litigation, a question that was already resolved in the prior appeal. And, his arguments about the district court's order directing the payment of attorney fees by Cottonwood Flats ignore the express language of the operative attorney fee statute. While § 21-2076(1) did not authorize a court to order payment of fees by individual defendants, it explicitly stated that fees could be recovered from the corporation. See *Trieweiler v. Sears, supra*. The district court had jurisdiction to order Cottonwood Flats to pay the portion of the plaintiffs' fee allocated to the corporate side of the case. Kurt's fourth and fifth assignments of error fail.

*District Court's Compliance With Mandate.*

Kurt's first three assigned errors generally raise the issue of whether the district court, in granting the plaintiffs' motion to alter or amend, exceeded the scope of this court's mandate. We first address the question of whether the October 2023 order on remand complied with our mandate, or as asserted in the plaintiff's motion to alter or amend, our mandate required the court to make additional findings, which it did in the December 2023 order. Next, we address the question of whether the court had sufficient evidence to allocate the attorney fee award between the corporate and trust portions of the case and whether the court abused its discretion in the actual allocation. Finally, we address the question of whether by using language in the December 2023 order to enter judgment for payment of the attorney fees allocated to the trust side of the case that was inconsistent with the language used in the attorney fees judgments entered in February 2019 and May 2020, the district court violated this court's mandate.

In appellate procedure, a "remand" is an appellate court's order returning a proceeding to the court from which the appeal originated for further action in accordance with the remanding order. *Darling Ingredients v. City of Bellevue*, 313 Neb. 853, 986 N.W.2d 757 (2023). After receiving a mandate, a trial court is without power to affect rights and duties outside the scope of the remand from an appellate court. *TransCanada Keystone Pipeline v. Tanderup*, 305 Neb. 493, 941 N.W.2d 145 (2020). When a lower court is given specific instructions on remand, it must comply with the specific instructions and has no discretion to deviate from the mandate. *Darling Ingredients v. City of Bellevue, supra*.

In the previous appeal, Kurt did not challenge the total amount of attorney fees awarded to the plaintiffs, and he did not challenge the district court's finding that attorney fees were appropriately awarded under § 30-3893, the basis for an attorney fee award in the trust portion of the case. He did challenge the award of attorney fees in the derivative action against an individual director rather that Cottonwood Flats. We agreed that the court abused its discretion in that regard. We also found that the total amount of attorney fees awarded in May 2020 was clearly for work by the plaintiffs' attorneys on the entire case and not just the trust portion of the case. On remand, the district court was to consider the evidence admitted at the post-trial attorney fee hearing to

determine whether an award of attorney fees was appropriate under § 21-2076(1) or (3). It also needed to determine how much of the total attorney fee award was attributable to the trust side of the case per § 30-3893. Kurt argues that this second step was required only if the trial court determined that no award was proper under either subsection of § 21-2076. Kurt misreads our instructions on remand. We were not precluding the court from determining the amount of fees on the trust portion of the case based upon the record already made; rather, we instructed that an evidentiary hearing could be held to determine the amount of the trust fees in the event that an award was not appropriate under § 21-2076 (1) or (3). See *Hohenstein v. Hohenstein*, No. A-22-108, 2023 WL 5217713, at *20-21 (Neb. App. Aug. 15, 2023) (selected for posting to court website).

In the October 2023 order on remand, the district court found, pursuant to § 21-2076(1), that Cottonwood Flats received a substantial benefit from the proceedings and that reasonable attorney fees should be awarded. Based on the evidence admitted at the post-trial attorney fee hearing, the court granted the plaintiffs' judgment for attorney fees and expenses totaling $413,059.04. The court then ordered that those attorney fees and expenses should be paid by Cottonwood Flats as allowed in § 21-2076(1). Because the court did not make any findings regarding fees pursuant to § 30-3893, the October 2023 order did not fully comply with this court's mandate. Accordingly, it did not err in granting the plaintiffs' motion to alter or amend and making such findings in the December 2023 order. Kurt's arguments to the contrary fail.

In challenging the allocation of the attorney fee award made in the district court's December 2023 order, Kurt does not assign error to the actual amounts allocated to the corporate and the trust sides of the case. Rather, he asserts that the court erred in making any allocation because there was insufficient evidence to do so. He focuses on certain statements made by the plaintiffs in their motion to alter or amend, which he argues constituted a judicial admission. In paragraph 7 of their motion to alter or amend, the plaintiffs stated:

> In other cases involving attorney fees it may be possible to review the individual attorney time entries and determine which entries related to a particular issue in the case in order to specifically allocate the fees among the various issues. In this case, however, the corporate and trust issues were inextricably intertwined and Kurt Hohenstein's actions would not have been possible without involvement of both the trust and the corporation. It would, therefore, be impossible to place each individual time entry into the corporate or trust category. Accordingly, Plaintiffs[] assert the most reasonable and equitable allocation in this matter is an equal allocation with one-half of the fees allocated to the trust issues and one-half of the fees allocated to the corporate issues.

A judicial admission, as a formal act done in the course of judicial proceedings, is a substitute for evidence and thereby waives and dispenses with the production of evidence by conceding for the purpose of litigation that the proposition of fact alleged by an opponent is true. *Clemens v. Emme*, 316 Neb. 777, 7 N.W.3d 166 (2024). Judicial admissions must be deliberate, clear, and unequivocal, and they do not extend beyond the intent of the admission as disclosed by its context. *Id.*

The plaintiffs' statements in paragraph 7 of their motion to alter or amend are not a judicial admission. When reviewed in the context of their motion as a whole, the intent of the statements

in paragraph 7 was to offer support for the plaintiffs' proposal that the most expeditious solution would be for the district court to simply allocate half of the total attorney fee award to the trust side of the case and half to the corporate side.

Contrary to Kurt's assertions, this court's mandate did not require the district court to take additional evidence or prevent it from reviewing the attorney fee affidavits admitted at the post-trial attorney fee hearing. Although the court did not set out exactly "which entries from the exhibits it reallocated to arrive at its decision," its findings are not "impossible to evaluate." Brief for appellant at 33. In reaching its allocation, the court clearly considered the assertions in the attorney fee affidavits that one of the plaintiffs' attorneys worked primarily on trust matters and that the other attorney worked primarily on corporate matters. The attorney fee affidavits confirm the general division of labor between the plaintiffs' attorneys, as did the attorneys at the hearing on the plaintiffs' motion to alter or amend. The fee statements attached to the affidavits are clearly marked to show the work performed by each attorney. At the hearing on the plaintiffs' motion to alter or amend, Kurt suggested that the court could use the division of labor between the plaintiffs' attorneys as a method of allocating the fees. In doing so, he invited any error by the court in adopting that method of allocation. Generally, a party cannot complain of error which the party has invited the court to commit. See *Keiser v. Keiser*, 310 Neb. 345, 965 N.W.2d 786 (2021) (finding party invited any error in trial court's methodology for calculating child support where court explicitly adopted party's proposed method of calculation).

On remand, the district court was limited by the total amount of attorney fees previously awarded ($413,059.04), but determination of what portion of that total to allocate to each side of the case was within the court's discretion. See *McGill Restoration v. Lion Place Condo. Assn.*, 309 Neb. 202, 959 N.W.2d 251 (2021) (when attorney fee authorized, amount of fee is addressed to discretion of trial court). An award of attorney fees involves consideration of such factors as the nature of the case, the services performed and results obtained, the length of time required for preparation and presentation of the case, the customary charges of the bar, and general equities of the case. *Douglas Cty. Sch. Dist. No. 10 v. Tribedo, LLC*, 307 Neb. 716, 950 N.W.2d 599 (2020). While the successor judge did not preside over the trial in this case, he has presided over matters since December 2019, including the post-trial attorney fee hearing. At this point, he has considerable familiarity with the parties and the issues involved. In allocating the attorney fees previously awarded, the court clearly considered the parties' arguments raised on remand and conducted its own review of the evidence previously admitted at the post-trial attorney fee hearing, as per this court's mandate. The district court was within its discretion to allocate $143,525.42 of the attorney fee award to the trust side of the case and $269,533.62 to the corporate sides of the case.

Finally, we address the effect of the inconsistent language used by the district court in the December 2023 order to enter judgment for payment of the attorney fees allocated to the trust side of the case. In that order, the court found pursuant to § 30-3893, "that justice and equity require that Defendant, Kurt Hohenstein, Individually, be Ordered to pay Plaintiffs' attorney fees incurred in prosecution of this action." It then ordered that $143,525.42 of the plaintiffs' attorney fees and expenses "should be paid by the defendant, Kurt Hohenstein, Individually." This language is inconsistent with the language used to enter judgment for payment of attorney fees in the court's

February 2019 and May 2020 orders. Kurt argues that by entering a judgment inconsistent with the court's prior judgments, the district court did not comply with this court's mandate. We agree.

In entering judgment for attorney fees in the February 2019 order following trial, the district court stated:

> Pursuant to . . . § 30-3893 the court finds that justice and equity require that Kurt Hohenstein, individually, and Kurt Hohenstein as Special Administrator of [his mother's estate], be jointly and severally ordered to pay the Plaintiffs' attorney fees and costs incurred in prosecuting this action. Pursuant to . . . § 21-2076 the [c]ourt further finds this proceeding has resulted in a substantial benefit to Cottonwood Flats and Kurt Hohenstein, individually, and Kurt Hohenstein as Special Administrator of [his mother's estate], should be jointly and severally ordered to pay Plaintiffs' attorney fees and costs incurred in prosecuting this action. Further proceedings will be held to determine the amount of the Plaintiffs' costs, and expenses and reasonable attorney fees and judgment will then be entered in favor of Plaintiffs and against Kurt Hohenstein, individually, and Kurt Hohenstein as Special Administrator of [his mother's estate], jointly and severally, for such amount.

Following the post-trial attorney fee hearing, in May 2020, the court awarded the plaintiffs judgment "against Kurt Hohenstein, individually, and Kurt Hohenstein as Special Administrator of [his mother's estate]" for attorney fees and costs totaling $413,059.04. The December judgment for payment of attorney fees in the trust side of the case is inconsistent with the court's prior attorney fee judgments.

A district court has an unqualified duty to follow the mandate issued by an appellate court and must enter judgment in conformity with the opinion and judgment of the appellate court. *Barnett v. Happy Cab Co.*, 311 Neb. 464, 973 N.W.2d 183 (2022). A lower court may not modify a judgment directed by an appellate court; nor may it engraft any provision on it or take any provision from it. *Id.* No judgment or order different from, or in addition to, the appellate mandate can have any effect. *Id.* Because a trial court is without power to affect rights and duties outside the scope of the remand from an appellate court, any order attempting to do so is entered without jurisdiction and is void. *TransCanada Keystone Pipeline v. Tanderup*, 305 Neb. 493, 941 N.W.2d 145 (2020). When a lower court lacks subject matter jurisdiction to decide an issue, an appellate court also lacks the power to resolve the issue. See *Lancaster County v. Slezak*, 317 Neb. 157, 9 N.W.3d 414 (2024).

Our mandate required the district court to determine whether an award of attorney fees under § 21-2076 was appropriate and then make findings under § 21-2076 and § 30-3893 to allocate the attorney fees and expenses awarded between the corporate and trust sides of the case. We did not direct the court to reconsider which of the defendants was liable for payment of attorney fees under § 30-3893. As discussed above, the court's December 2023 order complied with our instructions to make findings under § 21-2076 and to allocate attorney fees. But, by entering judgment for fees in the trust portion of the case against Kurt individually, the court, however inadvertently, altered the previous finding that fees under § 30-3893 should be paid jointly and severally by both defendants, i.e., by Kurt individually and Kurt as special administrator of his

- 10 -

mother's estate. The court did not have jurisdiction to do so and that portion of the December 2023 order was void.

Because the district court did not have the authority to affect rights and duties outside the scope of the remand, we vacate and set aside that portion of the district court's order stating that the attorney fees allocated to the trust side should be paid by Kurt Hohenstein, individually, and we remand with directions to enter judgment for attorney fees and costs in the trust portion of the case in conformity with this opinion. See *In re Estate of Koetter*, 312 Neb. 549, 980 N.W.2d 376 (2022) (when appellate court determines it lacks jurisdiction over decision of lower court because lower court lacked jurisdiction, appellate court has power to vacate void order and, if necessary, to remand cause with appropriate directions). See, also, *In re Trust Created by Augustin*, 27 Neb. App. 593, 935 N.W.2d 493 (2019) (vacating portions of order concerning matters over which trial court did not have jurisdiction); *State v. Henk*, 299 Neb. 586, 909 N.W.2d 634 (2018) (vacating and setting aside portion of order concerning claims outside of mandate).

## CONCLUSION

We vacate, for lack of jurisdiction, and set aside that portion of the district court's December 2023 order stating that the attorney fees allocated to the trust side should be paid by Kurt Hohenstein, individually, and we remand with directions to enter judgment for attorney fees and costs in the trust portion of the case in conformity with this opinion. We affirm the December 2023 order in all other respects.

AFFIRMED IN PART, AND IN PART VACATED
AND REMANDED WITH DIRECTIONS.